Jay BRUMMETT, Plaintiff–Appellant,

v.

Jimmy CAMBLE, Jim Boles, Doug Sanders, Dan Boulware, John R. Maclean, First State Bank of Cleburne, Texas, and Johnson County, Texas, Defendants–Appellees.

No. 90–1671.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1991.

Rehearing Denied Dec. 20, 1991.

Douglas R. Larson, Mesquite, Tex., for plaintiff-appellant.

James D. McCarthy, Kim J. Askew, Hughes & Luce, Dallas, Tex., for Camble, First State Bank, Boles & Sanders.

Elizabeth G. Storm, Frank Betancourt, Dehay & Blanchard, Dallas, Tex., for Boulware, Maclean and Johnson County, Tex.

Gary L. Bledsoe, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Mary F. Keller, Executive Asst. Atty., Gen. Litigation Div., Austin, Tex., for Maclean.

Before JONES and DUHÉ, Circuit Judges, and WALTER,[1] District Judge.

EDITH H. JONES, Circuit Judge:

Appellant Jay Brummett filed suit against numerous public and private defendants alleging that they conspired to prosecute him maliciously in violation of 42 U.S.C. § 1983. The trial court dismissed the public defendants from the suit on immunity grounds and granted summary judgment for the private defendants on limitations grounds. We disagree that the statute of limitations bars the case against the private defendants, and we conclude that it is premature to rule on the county's liability, but we generally affirm dismissal of the public defendants.

### I.

The gist of Brummett's complaint is that he was prosecuted under an inapplicable Texas statute for not repaying a bank loan. In January 1982, Brummett borrowed $33,-445.80 from First State Bank of Cleburne, Texas ("FSB"), collateralized by the equipment and inventory of his retail stereo business. Fifteen months later, Brummett advised FSB loan officer Doug Sanders that his financial condition was rapidly deteriorating, and he could no longer make the payments due under the note. When Sanders visited Brummett's store with Jim Boles, an FSB collection officer, to survey the inventory, Brummett informed them that it had been sold to customers in the normal course of business.

After Brummett's business closed in April 1983, Sanders asked him and his wife to sign a new note. Brummett refused. Resorting to standard loan collection procedures, the bank sent a demand letter to Brummett through its attorney. This was followed by a notice that the bank had elected to turn the matter over to the district attorney's office. The same day, Brummett received a letter from then County Attorney Dan Boulware, advising Brummett that he was subject to indictment for "removing" the collateral that secured his debt to FSB—a felony violation of Tex.Penal Code § 32.33.

Brummett appeared before a Johnson County grand jury and testified that no crime had taken place; he stated that, as FSB knew and agreed, he had sold his inventory in the normal course of business. At this point, Boulware angrily stated: "O.K., Jay, let's get the facts straight.

---

1. District Judge of the Western District of Louisiana, sitting by designation.

You mortgaged property, you sold it, you admit it, and that puts you right in the middle of this statute and that's the facts." The Grand Jury then indicted him for "removing" property with intent to hinder enforcement of FSB's security interest. Brummett was never incarcerated for this charge. Rather, after almost three years of court appearances, the charge against Brummett was dismissed on April 7, 1986 for insufficient evidence.

Brummett filed suit on March 26, 1987, alleging malicious prosecution in violation of state law and 42 U.S.C. § 1983. Named as defendants were prosecutors Boulware and John R. Maclean, Johnson County, FSB, Boles, Sanders, and FSB president Jimmy Camble. The trial court dismissed Brummett's original complaint for lack of specificity, but it allowed him to replead in accordance with *Elliott v. Perez*, 751 F.2d 1472, 1479 n. 20 (5th Cir.1985). Brummett responded with an Amended Complaint alleging that Maclean—then district attorney of Johnson County, now a state district judge—was a member of the FSB board of directors, as well as a stockholder of FSB, when FSB decided to pursue a criminal prosecution against Brummett. Brummett also alleged that Boulware—then county attorney, now district attorney, for Johnson County—was a major stockholder of FSB. Brummett contended, based on Maclean and Boulware's personal interests in FSB, that the two prosecutors conspired with FSB employees to indict him illegally by convincing the Grand Jury that there was evidence that a crime had been committed

when in fact there was none. Brummett alleged that a violation of § 32.33 requires that the collateral must be transferred outside the state of Texas. Brummett asserted that the defendants had absolutely no evidence to support such an allegation and, therefore, they pursued the criminal prosecution against him in bad faith and without probable cause. The trial court held that these allegations stated a claim against the private defendants, but it ordered dismissal of the public defendants, Maclean, Boulware and Johnson County based on official immunity.

Camble, Boles, Sanders, and FSB then moved for summary judgment. Brummett filed a detailed response and also attempted to depose Boulware, Maclean, and one of their assistants. His efforts were thwarted by the former prosecutors' refusal to testify. The district court referred the dispute to a magistrate judge, who ultimately ruled that depositions were proper. This ruling was appealed to the district court but never acted upon. In the meantime, the district court granted summary judgment solely on the ground that Brummett had filed his § 1983 claim outside the applicable limitations period. The district court then dismissed Brummett's pendent state law malicious prosecution claim. Brummett appealed.

## II.

That malicious prosecution can form the basis of a § 1983 claim is not disputed by the defendants.[2] Instead, Brummett chal-

---

2. Our most recent cases have assumed that malicious prosecution violates § 1983. *See Thomas v. Kippermann*, 846 F.2d 1009 (5th Cir.1989); *Hand v. Gary*, 838 F.2d 1420, 1426 (5th Cir. 1988); *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254 (5th Cir.1984). Not long ago, however, our court had held that torts of abuse of process (of which malicious prosecution is a branch) were not encompassed within § 1983. *Cook v. Houston Post*, 616 F.2d 791, 794 (5th Cir.1980) (malicious prosecution); *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187 (5th Cir.1978); *Curry v. Ragan*, 257 F.2d 449 (5th Cir.1956).

Mysteriously, other circuit courts seem also to have flip-flopped on the constitutional tort status of malicious prosecution. *Compare Torres v. Superintendent of Police of Puerto Rico*, 893

F.2d 404, 408 (1st Cir.1990) (§ 1983 includes malicious prosecution), with *Cloutier v. Town of Epping*, 714 F.2d 1184, 1190 (1st Cir.1983) (no § 1983 malicious prosecution action), and with *Sullivan v. Choquette*, 420 F.2d 674 (1st Cir. 1969), *cert. denied*, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). *Also compare Duncan v. Peck*, 844 F.2d 1261, 1267 (6th Cir.1988), with *Dunn v. State of Tenn.*, 697 F.2d 121 (6th Cir. 1982) (no § 1983 malicious prosecution action unless plaintiff was deprived of specific constitutional right). Still other circuits have consistently held that there is a § 1983 action against malicious prosecution: *Inada v. Sullivan*, 523 F.2d 485, 487–88 (7th Cir.1975); *White v. Frank*, 855 F.2d 956, 961 n. 5 (2d Cir.1988); *Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 907

lenges the district court's dismissal of Boulware and Maclean on immunity grounds. He argues that Boulware and Maclean "acted when there was an actual conflict of interest" and, therefore, they are not shielded from a § 1983 suit. Alternatively, Brummett contends that even if Boulware and Maclean are entitled to prosecutorial immunity, they are not immune as owners/stockholders/directors of FSB. We reject these arguments.

■ Prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case," because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Patchman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). *See also Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991).

■ Brummett argues, however, that this rule does not apply where a prosecutor faces an actual conflict of interest. Citing *Beard v. Udall,* 648 F.2d 1264, 1271 (9th Cir.1981), Brummett contends that a prosecutor who has a personal interest in filing charges that he knows to be baseless is acting "beyond the scope of his authority and thus [he] does not enjoy absolute immunity." *Beard* is inapposite, however, for three reasons. First, the Ninth Circuit explicitly overruled the decision in *Ashelman v. Pope,* 793 F.2d 1072, 1077–78 (9th Cir.1986) (en banc), stating that immunity should not be affected by the motives with which a prosecutor's acts are performed. *Id.* at 1077. Second, *Beard* is not the law in this circuit. In *Holloway v. Walker,* 765

F.2d 517, 522–23 (5th Cir.1985), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985)—a case involving allegations of bribery against a judge—this court observed that the mere fact that a judge undertakes to perform a judicial act motivated by *"personal interest,* bad faith, or outright malevolence" does not destroy his immunity. Third, absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions. *See Cleavinger v. Saxner,* 474 U.S. 193, 200–01, 106 S.Ct. 496, 500, 88 L.Ed.2d 507 (1985) (exemption of judges from civil liability cannot be affected by the motives with which their judicial acts are performed); *Rykers v. Alford,* 832 F.2d 895 (5th Cir.1987) (absolute immunity shelters prosecutors even when they act maliciously, wantonly, or negligently). Inasmuch as the purposes of extending absolute immunity to prosecutors are to avoid deflecting the prosecutor's energies from his public duties and to encourage the independent exercise of judgment required by his office, *Imbler,* 424 U.S. at 425, 96 S.Ct. at 992, foreclosing that immunity upon allegations of a conflict of interest would seriously undermine such policies. The district court correctly recognized the prosecutors' absolute immunity, as prosecutors, from Brummett's suit.

■ Alternatively, Brummett alleged claims against Maclean in his individual capacity as a member of the First State Bank's Board of Directors and against Boulware in his individual capacity as stockholder/legal counsel for First State Bank. The question thus posed is whether,

---

(3d Cir.1984); *Morrison v. Jones,* 551 F.2d 939 (4th Cir.1977).

The Ninth Circuit has held that there is no § 1983 malicious prosecution claim unless the prosecution is conducted with the intent to deprive a person of equal protection or other enumerated constitutional rights. *Usher v. City of Los Angeles,* 828 F.2d 556, 561–62 (9th Cir. 1987).

Only Judge Gee's opinion in *Wheeler, supra,* has endeavored to explain why a malicious prosecution might always violate the constitution so as to be actionable under § 1983, and he founded that conclusion with admitted tentativeness on the implied constitutional right to

have charges brought only upon probable cause. Whether *Wheeler* would survive the Supreme Court's recent attempts to predicate constitutional rights on a more textual footing is arguable. *See, e.g., Wilson v. Seiter,* —— U.S.——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). *Wheeler* would, however, clearly survive to the extent that a malicious prosecution caused a plaintiff's pretrial detention or otherwise infringed specific constitutional guarantees. The Supreme Court may have to decide this question someday. *See, e.g., Cerbone v. Conway,* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986), *writ dismissed as improvidently granted.*

if Boulware and Maclean acted in their respective capacities as shareholder/counsel or director of FSB to spur the filing of criminal charges against Brummett, they shed their prosecutorial immunity.

This is an interesting question. One line of authority holds that even though a judge or prosecutor is bribed—the quintessential act in self-interest—he is absolutely immune for acts performed in the scope of the judicial or prosecutorial function. *See Sparks v. Duval County Ranch Co., Inc.,* 604 F.2d 976 (5th Cir.1979) (en banc), aff'd., *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). According to another line of authority, however, he does not enjoy absolute immunity for actions undertaken outside the scope of judicial or prosecutorial action. Thus, it has been held that a judge may be sued for dismissing an employee. *Forrester v. White,* 484 U.S. 219, 227–29, 108 S.Ct. 538, 544–45, 98 L.Ed.2d 555 (1988) (judges are not absolutely immune from liability and damages for administrative, legislative, or executive functions that judges may occasionally be assigned by law to perform). A prosecutor, moreover, may be sued for giving erroneous legal advice to the police. *Burns v. Reed,* — U.S. ——, 111 S.Ct. 1934, 1943, 114 L.Ed.2d 547 (1991).

On balance, we believe that prosecutorial immunity must be recognized notwithstanding Brummett's allegations that Boulware and Maclean fostered charges against him in a private as well as official capacity. Our justification is the functional approach to immunity, which considers and protects certain acts of the judge or prosecutor regardless of their motives. To hold that Boulware and Maclean wore two hats when opting to press charges against Brummett is no different than suggesting that they were bribed or overcome by self-interest in the decision-making process: it is a conclusion that the FSB "hat" governed the decision to perform what was nonetheless a prosecutorial function. Thus, the dual capacity argument focuses impermissibly on the officials' motivations. Moreover, the dual hat theory is a very loose concept that furnishes no rule of thumb for prosecutorial conduct; by this very fact it would stymie prosecutorial independence as the courts attempted to flesh out its ramifications. We perceive little good coming from such a theory and the potential for considerable mischief. The function exercised here was clearly protected by absolute immunity, and it is to the function that we defer. The district court properly dismissed Boulware and Maclean.

### III.

◼ The district court also dismissed Johnson County on the ground that Brummett's claims were barred by the prosecutors' absolute immunity. Defendants argue that dismissal was proper because "counties cannot be held liable when their prosecutors are entitled to prosecutorial immunity."

Although this is an appealing argument, it is also novel. The Supreme Court approved municipal liability for § 1983 violations notwithstanding the qualified immunity defense of the individual municipal officers. *Owen v. City of Independence,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980); *see also Hernandez v. City of Lafayette,* 643 F.2d 1188, 1196 (5th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982) (city potentially liable for § 1983 violation committed by mayor with absolute legislative immunity). Johnson County contends the situation is different because its County and District Attorneys, Boulware and Maclean, enjoyed absolute rather than qualified immunity. Perhaps so. Nevertheless, discretion seems to be the better part of valor here, for we, as well as the district court, are far from rendering a decision on the county's liability. Such a decision would follow conclusions, among others, that (1) the prosecutors' actions amounted to a local custom or policy[3]; (2) the county and district attorneys are county rather than

---

**3.** *See, e.g., Raysor v. Port Authority of New York & New Jersey,* 768 F.2d 34, 38 (2d Cir.1985) (no custom or policy).

state officers under Texas law; and (3) there was an actionable § 1983 conspiracy between the private defendants and the prosecutors. So few § 1983 malicious prosecution cases have survived to entry of judgment that, based on their histories, we are reluctant to rule on what is at this stage an abstract, albeit important, proposition of potential municipal liability. Accordingly, the judgment dismissing Johnson County is vacated for further consideration in light of later events in the trial court.

## IV.

Having disposed of the issues with respect to the public defendants, we turn to consider the district court's conclusion that the statute of limitations barred this action against the private defendants.

Brummett agrees that the applicable limitations statute is Tex.Rev.Civ.Prac. & Rem.Code Ann. § 16.003, which requires a suit to be commenced within two years after the cause of action accrued. *See Wilson v. Garcia*, 471 U.S. 261, 267–68, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985) (federal courts must select the most appropriate state statute of limitations for § 1983 claims); *Helton v. Clements*, 832 F.2d 332, 334 (5th Cir.1987); *Peter Henderson Oil Co. v. City of Port Arthur*, 806 F.2d 1273, 1275 (5th Cir.1987). He contends, however, that his malicious prosecution claim did not accrue on July 1, 1983 when he was indicted, as found by the district court, but rather on April 9, 1986, when the state prosecution terminated in his favor. Accordingly, Brummett insists that the instant suit, filed on March 26, 1987, is not time-barred.

The root of this problem lies in the undefined overlap between state common law tort actions and federal civil rights actions brought pursuant to § 1983. Not every common law tort committed by state or local government officials is actionable under § 1983. *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Relying on this truth, defendants contend that Brummett "pins his hopes for reversal on the deceptively simple notion" that the limitations period applicable to a § 1983 malicious prosecution claim "cannot begin to run until it would begin to run on a malicious prosecution claim brought pursuant to state law." This statement mischaracterizes Brummett's position, however, for he contends that favorable termination is an essential element of a § 1983 malicious prosecution claim and, therefore, the cause of action does not accrue until that element has been established. We agree with Brummett.

In order to sustain the district court's conclusion that a malicious prosecution claim under § 1983 accrues prior to favorable termination of the underlying criminal proceedings, one of two propositions must be true: (1) favorable termination is not an element of a § 1983 malicious prosecution claim; or (2) a § 1983 claim may accrue *before* all of its elements are established. Neither proposition can withstand scrutiny.

As has been said, the federal courts have repeatedly held that common law and state tort law do not define the scope of liability under § 1983. A § 1983 complaint must, however, allege a *wrong* to the plaintiff. The essence of a malicious prosecution claim is a groundless prosecution. At common law, a conviction alone is sufficient to establish probable cause for a prosecution. *See Dunn v. Tennessee*, 697 F.2d 121, 127 (6th Cir.1982), *cert. denied sub nom., Wyllie v. Dunn*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). Hence, the common law requires that the underlying criminal proceeding must terminate in the plaintiff's favor.

Absent a similar requirement of "favorable termination" for the constitutional tort of malicious prosecution, a plaintiff could state a § 1983 claim even in cases in which he was ultimately convicted. In such cases, the federal courts would be forced to permit defendants to relitigate the merits of their criminal prosecutions via § 1983 despite the state court conviction. Such a rule, which poses the prospect of harassment, waste, and endless litigation, conflicts with the most basic principles of federalism.

Faced with this specter of unwarranted federal intrusion into state affairs, the fed-

eral courts have adopted the common law rule that termination of the underlying criminal proceeding in favor of the accused is an essential element of a § 1983 malicious prosecution claim. *See, e.g., Torres v. Superintendent of Police,* 893 F.2d 404, 409 (1st Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 349 (3d Cir.1989); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir. 1988); *Venegas v. Wagner,* 704 F.2d 1144, 1146 (9th Cir.1983); *Singleton v. City of New York,* 632 F.2d 185, 198 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Morrison v. Jones,* 551 F.2d 939, 940–41 (4th Cir.1977); *Sullivan v. Choquette,* 420 F.2d 674 (1st Cir. 1969), *cert. denied,* 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). Finding nothing in the common law rule that undermines the policies fostered by § 1983, we likewise hold that a plaintiff may not state a claim under § 1983 for malicious prosecution absent proof that the prosecution terminated in his favor.

■ The question remains whether a § 1983 plaintiff should be required to file suit prior to such termination. Although state law supplies the limitations period for § 1983 claims, federal law determines when the cause of action accrues. *Board of Regents v. Tomanio,* 446 U.S. 478, 483–86, 100 S.Ct. 1790, 1794–86, 64 L.Ed.2d 440 (1980); *Helton v. Clements,* 832 F.2d 332, 334–35 (5th Cir.1987). In this circuit, a § 1983 claim accrues when the plaintiff "becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Helton,* 832 F.2d at 332 (citing *Rubin v. O'Koren,* 621 F.2d 114, 116 (5th Cir.1980), *on reh'g,* 644 F.2d 1023 (5th Cir.1981), and *Lavellee v. Listi,* 611 F.2d 1129, 1131 (5th Cir.1980)). Relying on this standard, defendants insist that although a *state law* malicious prosecution claim does not accrue until the underlying criminal proceeding is terminated in the plaintiff's favor, a § 1983 malicious prosecution claim accrues when the plaintiff is indicted.

The perverse result of such a rule is that claimants would have to file § 1983 suits before they even know they have a cause of action, i.e., before a prosecution has ended favorably to them. Why defendants would advocate the filing of premature lawsuits defies our understanding as well as the uniform precedent of other circuit courts. *See, e.g., Robinson v. Moruffi,* 895 F.2d 649, 654–55 (10th Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 348–49 (3d Cir.1989); *McCune v. City of Grand Rapids,* 842 F.2d 903, 907 (6th Cir.1988); *Venegas v. Wagner,* 704 F.2d 1144, 1146 (9th Cir.1983); *Singleton v. City of New York,* 632 F.2d 185, 194–95 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Morrison v. Jones,* 551 F.2d 939, 940–41 (4th Cir.1977); *Sullivan v. Choquette,* 420 F.2d 674 (1st Cir.1969), *cert. denied,* 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62 (1970). *See also Wheeler,* 734 F.2d at 254. The cases cited by the defendants and the district court in support of a contrary holding involve § 1983 claims other than those for malicious prosecution. *See, e.g., Helton,* 832 F.2d at 332; *Rubin,* 621 F.2d at 116; *Lavellee,* 611 F.2d at 1131. We reject the defendants' accrual theory.

Brummett's suit was filed less than two years after the underlying criminal proceeding terminated in his favor. Accordingly, his § 1983 malicious prosecution claim was timely filed[4].

## V.

■ Defendants argue that if the district court's entry of summary judgment cannot be sustained on limitations grounds, it may be upheld on the basis that Brummett failed to establish that any of the private defendants acted "under color" of law. As the district court noted, a private person does not act under color of law simply because he invokes state authority. *Auster Oil & Gas, Inc. v. Stream,* 764 F.2d 381, 388 (5th Cir.1985), *cert. denied,* 488 U.S. 848, 109 S.Ct. 129, 102 L.Ed.2d 102 (1988). The color-of-law requirement is not satisfied by alleging that an individual filed a criminal complaint with prosecuting authorities. *Daniel v. Ferguson,* 839 F.2d

---

4. In addition to malicious prosecution, Brummett raised five other § 1983 claims in his Amended Complaint. He apparently concedes that these claims are barred by limitations and has abandoned them on appeal.

1124, 1130 (5th Cir.1988); *Sims v. Jefferson Downs Racing Ass'n, Inc.*, 778 F.2d 1068, 1078–79 (5th Cir.1985).

■ Brummett obviously recognized this rule, for he alleged not merely that the private defendants had filed a criminal complaint against him, but that they had corruptly conspired with prosecutors to obtain an indictment from the Grand Jury. Such a conspiracy theory is sufficient to establish that the private defendants acted under color of law within the meaning of § 1983. *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52, 90 S.Ct. 1598, 1604–06, 26 L.Ed.2d 142 (1970); *Smith v. Winter*, 782 F.2d 508, 512 (5th Cir.1986). This is true even if the private defendants are alleged to have conspired with one who has absolute, as opposed to qualified, immunity. *See Dennis, id.* 449 U.S. at 27, 101 S.Ct. at 186 (private co-conspirators of a judge held subject to § 1983 damages action); *Turner v. Upton County*, 915 F.2d 133, 137 n. 6 (5th Cir.) (parties to a conspiracy need not be state actors for liability to attach to them—"even if one of the co-conspirators is absolutely immune from liability for his own actions as a participant"), *cert. denied,* — U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

■ Defendants argue, however, that there is no evidence to support a conspiracy theory in this case. Although we have jurisdiction to address this claim, it has not been addressed by the district court, and the more prudent course is to leave it to the district court on remand. Brummett filed a substantial response to the defendants' motion for summary judgment. Moreover, he filed a Fed.R.Civ.P. 56(f) motion requesting permission to depose Boulware and Maclean in connection with his opposition to the motion. Although the magistrate judge concluded that such depositions were proper, the district court never ruled on this motion. We are aware of no rule that generally exempts prosecutors from the normal obligations of responding as witnesses if they have information material to a civil proceeding. Indeed, in a similar context, the Supreme Court held that judges, while absolutely immune from § 1983 suits, are not excused from "responding as witnesses when [their] co-conspirators are sued." *Dennis,* 449 U.S. at 30, 101 S.Ct. at 188. Accordingly, Brummett should have had the benefit of the prosecutors' deposition testimony if he needed it to prepare his response to the defendants' motion for summary judgment. We therefore express no view on the sufficiency of the existing summary judgment evidence.

## VI.

The judgment of the district court dismissing Boulware and Maclean on the basis of their immunity is AFFIRMED. The judgment is VACATED insofar as it dismissed Johnson County pursuant to Rule 12(b)(6) and granted summary judgment for the private defendants,[5] and the case is REMANDED for proceedings consistent with this opinion.

---

5. In light of this disposition, we leave the question whether Brummett's state law malicious prosecution claim should be reinstituted as a pendent claim to the sound discretion of the district court.