**Randy J. BLACKMON, Plaintiff,**

v.

**Jose M. PEREZ, et al., Defendants.**

**and**

**Denise L. HECKMAN, Plaintiff,**

v.

**Jose M. PEREZ, et al., Defendants.**

**Civ. A. Nos. 91–552–N, 91–553–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

May 5, 1992.

James D. Crutchfield, Norfolk, Va., for plaintiffs.

Allan S. Reynolds, Norfolk, Va., for defendant Jose M. Perez.

Alan B. Rashkind, Norfolk, Va., for defendants J.M. Edmonds and J.E. Tatem.

Harold P. Juren, Norfolk, Va., for defendants H.P. Henson and the City of Norfolk.

## ORDER

CLARKE, Senior District Judge.

On February 10, 1992, this Court referred to Magistrate Judge William T. Prince these consolidated matters for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has prepared and filed his Report and Recommendation and each party has had an opportunity to respond by filing objections to the Report with supporting memorandum, and by memorandum in support of the Magistrate Judge's Report and Recommendation, and by reply briefs.

The Court has made a thorough *de novo* review of the file and the briefs filed by the

parties and finds that the Magistrate Judge is clearly right in his interpretation of the law and that the record substantiates his factual conclusions. This matter was before him on a Motion of the various defendants to Dismiss or in the Alternative, for Summary Judgment. Because the Court finds the Magistrate Judge correct in both his interpretation of the law and his recitation of the facts, the Court, pursuant to 28 U.S.C. § 636(b)(1)(C), accepts the recommendation of the Magistrate Judge.

Based upon the Court's acceptance of the Magistrate Judge's recommendation, these actions are DISMISSED with prejudice as to all plaintiffs and all defendants.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### ORDER OF DESIGNATION

PRINCE, United States Magistrate Judge.

United States District Judge J. Calvitt Clarke, Jr., by an Order entered on February 10, 1992, designated the undersigned magistrate judge to conduct a hearing and submit to a Judge of this Court, pursuant to 28 U.S.C. § 636(b)(1)(B), proposed recommendations for disposition by a Judge of this Court of the various defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment. A hearing was held on February 10, 1992, at which James D. Crutchfield, Esquire, appeared on behalf of plaintiffs Randy J. Blackmon and Denise L. Heckman; Alan B. Rashkind appeared on behalf of defendants J.M. Edmonds and J.E. Tatum;[1] Harold P. Juren appeared on behalf of H.P. Henson and the City of Norfolk; and Allan S. Reynolds appeared on behalf of defendant Jose M. Perez.

## NATURE OF THE CASE

The plaintiffs, Randy J. Blackmon and Denise L. Heckman, bring this action against the remaining defendants: two Norfolk police officers, Jose M. Perez and J.M. Edmonds; the Chief of Police, H.P. Henson; and the City of Norfolk. The plaintiffs allege deprivation of their constitutional rights under 42 U.S.C. § 1983, conspiracy by defendants Perez and Edmonds to deprive the plaintiffs of their constitutional rights under 42 U.S.C. § 1985(3) and supplemental state law claims of assault and battery, malicious prosecution and unlawful search and seizure. This action stems from incidents following a traffic accident involving the plaintiffs late in the evening of September 1, 1989.

### A. Factual Allegations

On the night of September 1, 1989, Denise Heckman had an accident while driving a pick-up truck in which Randy Blackmon was a passenger. Heckman was knocked unconscious by the collision. Blackmon, who had called Heckman for a ride because he'd been drinking and didn't feel able to drive, removed Heckman from the vehicle and laid her out on the street.

An unmarked car pulled up to the plaintiffs. Officer J.M. Edmonds, dressed in plain clothes, got out of the car and approached the plaintiffs without identifying himself as a police officer or displaying his badge. Blackmon, unaware that Edmonds was a police officer, told him "in harsh language" (Am.Compl. ¶ 17) to stay away. Edmonds then told Blackmon to "[g]et your white ass on the sidewalk." (Am. Compl. ¶ 17).[2] Edmonds then grabbed Blackmon by the arm.

Officer Jose M. Perez then approached, also in plain clothes and without identifying

---

1. On plaintiffs' motion at oral argument, defendant J.E. Tatum was dismissed from this action without prejudice.

2. Plaintiffs set out the racial identity of the parties in their joint Brief in Opposition to the Defendants' Motions to Dismiss or for Summary Judgment [hereinafter Pl. Br. Opp.]: Edmonds

is an African American, Perez is of Hispanic descent, the plaintiffs are both white, non-Hispanics. (Pl. Br. Opp. at 2). This fact, which appears to be at the crux of plaintiffs' civil rights claims, is neither alleged in the complaint nor properly set out in any material supporting plaintiffs' opposition to summary judgment.

himself as a police officer. Perez threw Blackmon against a car and searched him, finding a small amount of marijuana. Perez then handcuffed Blackmon. When Blackmon protested, Perez slapped him and placed him in the unmarked car. Shortly thereafter, Blackmon was taken out of the car and the handcuffs were removed. Perez then told Blackmon to sign a warrant. Before Blackmon could comply, however, Edmonds threw him against a car and told him, "I love beating up white boys." Blackmon was then placed in a police car driven by another officer and taken to the hospital where Heckman had been taken. While being removed from the police car upon arrival at the hospital, Blackmon was knocked to the ground and repeatedly punched and kicked by Perez and Edmonds. He was then taken, handcuffed, into the emergency room for medical treatment. While awaiting treatment, Perez slapped Blackmon, still handcuffed, several times in the face.

Meanwhile, Heckman had been taken from the accident scene to the emergency room, where she regained consciousness and was treated for her injuries. She saw Blackmon being brought into the emergency room. Blackmon called to Heckman, telling her that he had been beaten by the police and that she should contact his parents. Heckman left the emergency room to find a phone. In doing so, she passed Perez, whom she had not seen before, having been unconscious at the scene of the accident. Perez, still in plain clothes and again without identifying himself, grabbed Heckman. A struggle ensued, during which Perez threw Heckman to the ground and slapped her repeatedly. When Heckman pulled free and attempted to flee, Perez threw her down again and choked her until a hospital security guard intervened.

After the plaintiffs received medical treatment, both were taken to police division headquarters. At the request of Blackmon's parents, the plaintiffs were driven to headquarters by an Officer Flynn. Edmonds rode in the passenger seat of Flynn's vehicle, with the plaintiffs in the back seat. Blackmon's parents followed. During the ride, Edmonds threatened Blackmon. In response to a subsequent request from the plaintiffs that the officers not smoke cigars in the vehicle because the smoke made it difficult to breathe, Edmonds cursed Heckman and called her a "slut" and called Blackmon "white trash." Upon arrival at headquarters, Edmonds took a quantity of money from Blackmon without giving him a receipt or an explanation. When Blackmon protested, Edmonds sprayed a Mace-like irritant in Blackmon's face.

Blackmon was charged with possession of marijuana and disorderly conduct. On January 3, 1990, the disorderly conduct charge was dismissed. Blackmon pled guilty to the possession charge, which was ultimately dismissed pursuant to Va.Code Ann. § 18.2–251 because of Blackmon's status as a first-time offender. Heckman was charged with disorderly conduct and assault and battery of a police officer. Her case, originally scheduled for trial on October 4, 1989, was continued. Despite that continuance, Perez and Edmonds wrongfully obtained a warrant for Heckman's arrest for failure to appear on October 4. Edmonds arrested Heckman on that warrant on December 5, 1989 and she was held until Blackmon secured her bond.

*B. Procedural History*

The complaints in these matters were initially filed on September 4, 1991. All defendants except Perez filed Motions to Dismiss on October 22, 1991.[3] Argument on those motions was heard on December 5, 1991, based on which plaintiffs were granted leave to file an Amended Complaint by December 20, 1991. The Amended Complaint deleted counts seeking damages for false arrest and negligent hiring and training and added a count for malicious prosecution. Subsequent to the filing

---

**3.** Defendant Perez apparently was never served with the initial complaint and summons in this matter. Perez's answer to the amended complaint was filed on January 7, 1992. Perez filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on January 30, 1992, relying on the memoranda submitted by his codefendants.

of the Amended Complaint, the defendants filed the motions currently before this court.

## DISCUSSION

The primary arguments of all defendants in support of dismissal or summary judgment are twofold: First, that the claims alleged are barred by the statute of limitations; and, second, that the complaint fails to state a claim under 42 U.S.C. §§ 1983 and 1985(3).

### A. Statute of Limitations

Defendants first contend that the plaintiffs' claims, both state and federal, are barred by the applicable statutes of limitations. Much of the argument of the parties is addressed to the appropriate statute of limitations to be applied to the federal claims.

■■■ Congress has never enacted a specific statute of limitations applicable to sections 1983 or 1985(3).[4] Instead, the United States Supreme Court has held that the state statute of limitations for personal injury actions applies to all section 1983 claims. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Commonwealth of Virginia has a two-year limitation period for personal injury actions. Va.Code Ann. § 8.01–243(A) (Michie Supp.1991). "While the time limitation itself is borrowed from state law, the federal rule fixes the time of accrual of a right of action." *Bireline v. Seagondollar*, 567 F.2d 260, 262 (4th Cir.1977) (emphasis added), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). The general rule for the time of accrual under federal law is "that point ... where the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.; see also Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975).

The defendants argue that the federal claims are all barred by the statute of limitations. The plaintiffs have pled that the arrests and assaults complained of all occurred on the night of September 1 and early morning of September 2, 1989. Therefore, the defendants assert, all of the plaintiffs' claims accrued, at the latest, on September 2. Because September 2, 1991, was a federal holiday, plaintiffs would then have to have filed their claims on September 3, 1991, in order to survive the statute of limitations. The defendants are correct insofar as they argue that all federal causes of action that accrued on or before September 3, 1989 are time barred.

The plaintiffs, on the other hand, seek to rescue all of their claims from the statute of limitations by characterizing this action as a federal civil rights action based upon a malicious prosecution. According to the plaintiffs, while such a federal action is subject to the two-year Virginia personal injury statute of limitations pursuant to *Wilson*, the cause of action does not accrue until such time as the allegedly malicious criminal proceeding is terminated in favor of the plaintiff.[5] Because the plaintiffs' various charges are threaded together by their allegedly malicious prosecutions at the hands of the defendants, they argue that "[n]ot until the charges were resolved in favor of Plaintiffs could Plaintiffs have maintained a successful action, under any theory of recovery." (Pl. Br. Opp. at 21).

The disorderly conduct charge against Blackmon and both charges against Heckman were dismissed on January 3, 1990; thus, the plaintiffs submit, all of their causes of action accrued on that date and were timely filed. While plaintiffs' accrual argument contains some merit, it does not stretch as broadly as they might hope.

■■■ The Fourth Circuit has recognized that a wrongful prosecution resulting in a constitutional deprivation may, in limited situations, give rise to a cause of action under § 1983. *Goodwin v. Metts*, 885 F.2d 157, 163 (4th Cir.1989), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942

---

4. *Cf.* 42 U.S.C. § 1986 (action for neglect to prevent conspiracy must be brought within one year of accrual of cause of action).

5. In fact, plaintiffs' request for leave to amend was for the very purpose of first asserting a malicious prosecution theory in an attempt to avoid the statute of limitations defense.

(1990); *Cramer v. Crutchfield,* 648 F.2d 943, 945 (4th Cir.1981); *aff'g* 496 F.Supp. 949, 952–53 (E.D.Va.1980); *see United Steelworkers of America v. Dalton,* 544 F.Supp. 291, 296 (E.D.Va.1982). This Circuit has also adopted the rule that a malicious prosecution claim under section 1983 does not accrue until the underlying criminal proceedings have been terminated in a manner favorable to the plaintiff. *Morrison v. Jones,* 551 F.2d 939, 940–41 (4th Cir.1977); *Cramer,* 496 F.Supp. at 952. While *Morrison* also applied the Virginia one-year statute of limitations for malicious prosecution claims, that case was decided prior to the United States Supreme Court decision in *Wilson* holding that *all* section 1983 actions are best characterized as personal injury actions for statute of limitations purposes. 471 U.S. at 278, 105 S.Ct. at 1948 (*quoting Almond v. Kent,* 459 F.2d 200, 204 (4th Cir.1972)).

The Fifth Circuit recently held that a § 1983 action grounded in a malicious prosecution is subject to the state's two-year limitation on personal injury claims,[6] but that the plaintiff's cause of action does not accrue until a favorable determination on the underlying prosecution. *Brummett v. Camble,* 946 F.2d 1178, 1183–84 (5th Cir. 1991). As a matter of common law, the termination of the prosecution in favor of a plaintiff is a necessary element of a malicious prosecution claim, as it is the very lack of merit in the prosecution that encompasses the wrong suffered by the plaintiff. As such, the same requirement must be incorporated into a § 1983 malicious prosecution claim. 946 F.2d at 1183. Requiring a plaintiff to file a § 1983 malicious prosecution claim prior to such termination would lead to the "perverse result [that] claimants would have to file § 1983 suits before they even know they have a cause of action." *Id.* at 1184. The reasoning of

the *Brummett* court is persuasive; therefore, as plaintiffs' § 1983 malicious prosecution claims were filed within two years of their accrual on January 3, 1990, those claims are not barred by the statute of limitations. *See also United Steelworkers,* 544 F.Supp. at 297.

■ Plaintiffs cannot, however, bootstrap the remainder of their claims beyond the operation of the statute of limitations. Plaintiffs allege a host of discrete constitutional violations stemming from their allegations of illegal search and seizure, unlawful arrest and imprisonment and physical abuse. Those claims, based on the events of September 1–2, 1989, accrued on that date and were in no way affected by the subsequent dismissal of the criminal charges against the plaintiffs. *See, e.g., McCune v. City of Grand Rapids,* 842 F.2d 903, 905–06 (6th Cir.1988); *Singleton v. City of New York,* 632 F.2d 185, 191 & n. 5 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Further, allegations of the existence of a conspiracy cannot generally postpone the accrual of causes of action stemming from the separate and discrete wrongs committed by the conspirators. *McCune,* 842 F.2d at 906. Thus, Counts One and Two of the plaintiffs' amended complaints should be dismissed as untimely filed to the extent that they contemplate causes of action based on the events of September 1–2, 1989.[7]

The state law counts must also be dismissed as untimely filed. The assault and battery and search and seizure claims alleged in Counts III and V of the Amended Complaint accrued, at the latest, on September 2, 1989 and are barred, as a matter of state law by the two-year limitations period of Va.Code Ann. § 8.01–243(A).[8]

---

**6.** While the parties in *Brummett* agreed that the two-year personal injury limitation period was the appropriate statute, it should be noted that Texas, like Virginia, has a one-year statute of limitations specifically applicable to state-law malicious prosecution claims. Tex.Rev.Civ. Prac. & Rem.Code Ann. § 16.002.

**7.** Plaintiff Heckman's claims of constitutional violation based upon her December 5, 1989 arrest for failure to appear survive the time bar.

**8.** It should also be noted that plaintiff Heckman alleges nothing that would support a claim on her behalf for an unlawful search and seizure under Va.Code Ann. § 19.2–59.

Plaintiffs' state law malicious prosecution claims, unlike the parallel federal claims, are barred by the one-year limitation period provided by Virginia law. Va.Code Ann. § 8.01–248.

## B. The Merits of the Remaining Claims

The defendants also argue that the Amended Complaints fail to state a claim upon which relief may be granted and make various claims to immunity. The defendants have attached affidavits to their motions, thus converting them into motions for summary judgment. Fed.R.Civ.Proc. 12(b). Summary judgment is to be granted when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). The defendants, as movants, bear

> the initial responsibility of informing the district court of the basis of [their] motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which [the movants] believe[] demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movants have pointed out the absence of a genuine issue for trial, the burden shifts to the non-movant plaintiffs to come forward with evidence of the type specified by Rule 56 of the Federal Rules of Civil Procedure to show that an issue for trial exists. The plaintiffs "may not rest upon the mere allegations [of the] pleadings, but ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.Proc. 56(e).

Plaintiffs have submitted no affidavits or other evidence in response to defendants' motions, contending that the motions for summary judgment are premature because the parties[9] have, apparently by tacit agreement, declined to pursue discovery pending the decision of this motion. The Court first notes that a pending dispositive motion does not entitle the parties to sit idly by and do nothing awaiting its outcome. Further, neither a motion to stay discovery, nor, as represented in plaintiffs' brief in opposition, a motion to revise the discovery schedule was ever presented to this Court. (*See* Pl. Br. Opp. at 4–5). Finally, Rule 56(f) requires a party seeking continuance or denial of a summary judgment motion because of a lack of discovery to inform the court of the need for further discovery by sworn affidavit. A party opposing a motion for summary judgment who fails to comply with this requirement does so at his own peril. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Radich v. Goode*, 886 F.2d 1391, 1393–94 (3d Cir.1989) (representations in memorandum opposing summary judgment insufficient under Rule 56(f)); *but see Shortt v. Richlands Mall Assocs.*, 781 F.Supp. 454 (W.D.Va.1991) (discovery request need not be in form of affidavit if record reflects need for additional discovery).

However, even in the face of the inadequacies of plaintiffs' filings in opposition, summary judgment is to be granted only "if appropriate." Fed.R.Civ.Proc. 56(e). While the movants are not required to negate their opponents' case, *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552, they must demonstrate that they are entitled to judgment as a matter of law. In their affidavits in support of summary judgment, the defendants have chosen to incorporate the factual allegations of the plaintiffs' Amended Complaint. (Perez Aff. ¶ 4; Edmonds Aff. ¶ 4). To the extent those allegations are adopted and unrebutted by the defendants, they shall be taken as true for the purposes of this motion.

■ As previously discussed, plaintiffs' causes of action for civil rights violations

---

**9.** The exception to this is defendant Perez, who served interrogatories and requests for produc-

tion on the plaintiffs on February 17, 1992.

under 42 U.S.C. § 1983 and conspiracy under 42 U.S.C. § 1985(3) stemming from the allegedly malicious prosecutions survive the statute of limitations. To state a claim for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must show "some racial, or perhaps otherwise class-based, invidiously discriminatory action behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). The statute in question was initially promulgated as the Ku Klux Klan Act of 1871 and was designed to prevent private conspiracies, especially those spearheaded by the Klan, aimed at preventing black citizens and their supporters from enjoying the rights guaranteed them by the Constitution. Joseph G. Cook & John L. Sobieski, Jr., *Civil Rights Actions* ¶ 1.28 (1991). The United States Supreme Court has stated that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than that against Negroes and those who championed their cause." *United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). The Fourth Circuit, recognizing the uncertainty as to the scope of § 1985(3), has stated that "the class protected can extend no further than to those classes of persons who are, so far as the enforcement of their rights is concerned, 'in unprotected circumstances similar to those of the victims of Klan violence.'" *Buschi v. Kirven*, 775 F.2d 1240, 1258 (4th Cir.1985) ("whistleblowers" not protected by § 1985(3)) (quoting *Carpenters*, 463 U.S. at 851, 103 S.Ct. at 3368 (Blackmun, J., dissenting)).

■ Given the caution that, in light of *Carpenters*, it is "doubtful" that the scope of § 1985(3) should be given an expansive reading, *see id.*, the plaintiffs' allegations do not fall within the ambit of the statute. Plaintiffs here allege that they were denied their rights to equal protection under the laws by a conspiracy of the defendant minority police officers because of their Caucasian race. Even if true, plaintiffs do not represent "'a class of persons' who [do] not enjoy 'the possibility of [ ]effective state enforcement of their rights.'" *Id.* (quoting *Carpenters*, 463 U.S. at 851, 103 S.Ct. at 3368); *see also Moore v. City and County of Denver*, 744 F.Supp. 1028, 1031 (D.Colo.1990) ("Because Caucasian males, as a class, have not been the victims of historically pervasive discrimination, ... they are not a group protected by § 1985(3)."). Plaintiffs had the opportunity to vindicate the wrongs they allege through a state law tort action. Through their own inaction in not timely filing their claims, they wasted that opportunity. The provisions of 42 U.S.C. § 1985(3) cannot save their cause of action in federal court.

■ Nor do the plaintiffs' § 1983 claims based on their allegations of malicious prosecution and, in Ms. Heckman's case, false arrest, survive defendants' motion for summary judgment. The Fourth Circuit has held that a plaintiff seeking to pursue a cause of action under the Civil Rights Act for such state-law torts must allege and prove a constitutional deprivation in addition to the traditional, common-law elements of the tort.[10] *Goodwin*, 885 F.2d at 163. The cases in which such a cause of action has been recognized in this Circuit have required that that constitutional deprivation be independent from the state law cause of action. *See id.* at 162–63 (police officer withheld exculpatory evidence after arrest and urged continuation of prosecution); *United Steelworkers*, 544 F.Supp. at 296 (defendant acted for the express purpose of denying plaintiffs of their right to strike). The plaintiffs' allegations, as adopted by the defendants, demonstrate no such independent deprivation. As explained by Judge MacKenzie of this Court in *United Steelworkers*,

---

**10.** In Virginia, the elements of malicious prosecution are

    (1) that the prosecution was set on foot by the defendant[s] and that it terminated in a manner not unfavorable to the plaintiff[s];

    (2) that it was instituted or procured by the cooperation of the defendant[s];

    (3) that it lacked probable cause; and

    (4) that it was malicious.

*Morrison v. Jones*, 551 F.2d 939, 940 (4th Cir. 1977); *Ayyildiz v. Kidd*, 220 Va. 1080, 266 S.E.2d 108 (1980).

Malicious prosecution cases ... have arisen in situations where a government official has instituted criminal proceedings, the defendant believing the proceedings to be unjustly commenced. In such circumstances, the criminal defendant has sought recovery under § 1983. Although the particulars of the claim may have been a denial of liberty, or equal protection, or due process, the claims reduce to charges of harassment and a denial of general constitutional rights. Courts have rejected these claims, finding nothing to distinguish them from the common law tort of malicious prosecution.

544 F.Supp. at 296. This Court does not believe that the language alleged to have been used by the officers in the instant case converts plaintiffs' complaints into a matter of constitutional dimension.

Plaintiffs cite a Ninth Circuit case, *Usher v. City of Los Angeles,* 828 F.2d 556 (9th Cir.1987) in support of their constitutional claims. In *Usher,* the Ninth Circuit held that a black plaintiff who alleged that he was arrested without cause, subjected to racial slurs during the course of his arrest, held handcuffed and refused toilet privileges for several hours, and prosecuted under contrived charges stated a claim upon which relief might be granted under 42 U.S.C. §§ 1983 and 1985. The plaintiff in *Usher* was within a class which is protected by § 1985(3). Further, the plaintiff in *Usher* clearly alleged that the charges against him were contrived by the defendant officers. The plaintiffs in the instant case merely allege that the charges against them were ultimately dropped. Finally, the case law of this Circuit does not interpret the coverage of the civil rights statutes at issue to encompass the plaintiffs' claims.

■■■ As the claims against the individual defendants state no constitutional violation, there can be no municipal liability for alleged unconstitutional customs or policies. Therefore, the claims against the municipal defendants and the official capacity claims against the individual defendants must also be dismissed. *See, e.g., Collins v. City of Harker Heights,* — U.S. —,

112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986); *Monell v. Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

## MAGISTRATE JUDGE'S RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that Counts III, IV and V of the Amended Complaints in their entirety, and Counts I and II of the Amended Complaints insofar as they contemplate a cause of action based on the events of September 1–2, 1989, be DISMISSED as untimely under the applicable statutes of limitations. It is further RECOMMENDED that summary judgment be GRANTED for all defendants on the remaining federal causes of action for malicious prosecution and false arrest under Counts One and Two of the Amended Complaints.

## DIRECTIONS FOR MAILING AND REVIEW PROCEDURES

The Clerk shall mail copies of this Report and Recommendation to counsel for the parties. By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing recommendations within ten (10) days from the date of mailing of this report to the objecting party (*see* 28 U.S.C. § 636(b)(1)(C)), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.

2. A district judge shall make a *de novo* determination of those portions of this report or specific recommendation to which objection is made.

The parties are further notified that failure to file timely objections to the recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such recommendations. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v.*

*Collins,* 766 F.2d 841, 846 (4th Cir.1985); *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir. 1984), *cert. denied,* 474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).