RHESA HAWKINS BARKSDALE, Circuit Judge,
dissenting:
As stated recently in Gordy v. Burns, 294 F.3d 722, 725 (5th Cir.2002) (emphasis added): “It would be an understatement to say that [our] circuit’s caselaw regarding so-called ‘Fourth Amendment malicious prosecution’ claims under § 1983 is both confused and confusing ”. (Emphasis added.) As evidenced by the majority opinion in this case, the confusion continues to expand. It is past time to correct our course.
Therefore, I must respectfully dissent from the majority’s holding that, in order to state a claim under § 1983 for a violation of his rights under the Fourth Amendment for malicious prosecution, Castellano was only required to satisfy the criteria for malicious prosecution under Texas law (§ 1983 malicious prosecution claim). In addition, notwithstanding the confused state of our circuit precedent in this area, I also must respectfully dissent from the majority’s holding that the district court did not commit reversible error when, for Castellano’s § 1983 malicious prosecution claim, it instructed the jury on the basis of Fourteenth Amendment “due process”, rather than Fourth Amendment “unreasonable seizure”, especially in the light of its having previously held the Fourth, not the Fourteenth, Amendment was the constitutional basis for Castellano’s pursuing the claim. Therefore, I do not reach the issues concerning sufficiency of the evidence, damages, and attorney’s fees.
For the reasons stated in Gordy and discussed at length infra, en banc review is required to clarify § 1983 malicious prosecution claims in this circuit. I urge such review; further, I would vacate the judgment and remand for further proceedings.
I.
For purposes of the issues addressed in this dissent, a statement of the relevant underlying facts and district court rulings is necessary.
Castellano owns Fred’s Fish Fry (Fred’s), a fast-food restaurant chain in San Antonio, Texas. Sanchez was the Fred’s area manager at the time of the incident giving rise to this case: a fire on 31 October 1984 that destroyed Fred’s Store Number 7 (No. 7). Sanchez was fired two days after the fire.
Fragozo, a San Antonio police officer, held an off-duty job as a Fred’s security guard for approximately one year, ending in the spring of 1984, prior to the October fire. According to Castellano, Fragozo quit his Fred’s job after Castellano, then Chairman of San Antonio’s Fire and Police Civil Service Commission, refused to provide Fragozo a copy of the police department’s examination for promotion to lieutenant.
Castellano denied ever expressing an intent to burn No. 7. Sanchez testified that he did. According to Sanchez: on or about 19 October 1984, Castellano began talking about intentionally burning No. 7; he first mentioned such a plan in response to Sanchez’s noting how slow business had been at No. 7; Castellano indicated he could collect $85,000 in insurance proceeds (he had recently increased No. 7’s coverage from approximately $50,000 to $85,000); on several other occasions between 19 and 26 October, Castellano spoke about the scheme, indicating he might execute it on 29 or 31 October; and he even elicited Sanchez’s help, by instructing her to tell employees, every time she visited No. 7, that she smelled gas.
*713 Sanchez relayed the content of the alleged conversations to Fragozo. In response, he gave Sanchez a voice-activated tape recorder he had purchased, so that Sanchez might tape any additional telephone conversations concerning a fire in No. 7. Fragozo and Sanchez testified that the purpose of recording such conversations was to protect Sanchez from any liability if arson were attempted.
On or about 29 October, an issue arose concerning missing deposits in the bank account for Fred’s. Castellano confronted Sanchez about the discrepancy and requested that she undergo a polygraph test. Sanchez refused.
Also on 29 October (according to Sanchez), Castellano instructed her to purchase Halloween items for the restaurants. Sanchez testified Castellano specifically wanted a candle in No. 7.
That evening, Sanchez began recording telephone conversations with Castellano. She made recordings on 29 and 30 October. While the recordings are occasionally unintelligible or pick up only one end of the conversations, they contain potentially inculpatory statements by a voice alleged to be Castellano’s. Among other topics, the statements regard fire insurance and stoves being left on in No. 7. According to Sanchez, one of the 30 October recordings included an admission by Castellano of a failed arson attempt on the evening of 29 October.
The recordings, however, contain no outright admissions. And, at trial, Castellano denied the voice at various spots on the recordings was his. Additionally, an expert witness for Castellano testified as to numerous junctures and inconsistencies on the tapes.
Sanchez testified about another admission by Castellano, made in person on 31 October, about a second failed attempt on 30 October. But, Castellano denied ever attempting arson or admitting to any such attempt.
On the evening of 31 October, No. 7 was destroyed by fire. Alfred Castro, a San Antonio arson investigator (and former defendant in this action), was assigned to investigate the fire that night. After surveying the scene, but before he knew who owned the building, Castro concluded the fire resulted from arson. Physical evidence included jars of gasoline, a disconnected natural gas line from No. 7’s water heater, and two wrenches.
Castro met Castellano at the scene during the early hours of 1 November and learned he was the owner. Castro asked Castellano whether the building was insured. According to Castro, Castellano indicated he was not certain but then stated he believed it was insured for $55,000. When Castro left the scene that morning, he had also concluded the fire was an inside arson job. At that point, however, he had no information to link Castellano to the fire.
Later on the morning of 1 November, Sanchez went to the fire scene. According to Sanchez: Castro had called her earlier and informed her No. 7 had burned down “with four gallons of gasoline”; while at the scene, she was paged and told to meet Castellano about a block away; she did so; and Castellano instructed her to tell No. 7’s manager that, if the police “ask[ed] [the manager] about the steel bar in the back door of the building, just for her to say that she don’t [sic] remember if she left it on [the door] or not the night before”.
Sanchez returned to the scene. Castro also did so that morning, where he interviewed Sanchez for the first time. She provided him the names of all employees at No. 7.
*714 Among the employees interviewed was Luis Cantu, a longtime Mend of Fragozo and longtime employee of Castellano. Cantu would later testify about an incident occurring shortly after the fire: Fragozo and Castro drove to his house; brought him to Fragozo’s car; and attempted to persuade him — allegedly while intimidating him with a weapon — to alter a statement he had provided to authorities concerning the fire.
On or about 2 November, Fragozo contacted Lieutenant Trevino of San Antonio’s Arson Department, informing him of an anonymous witness with information about two previous attempts to burn No. 7. Castro met with Fragozo on 6 November. Fragozo confirmed there was an informant, and stated he would try to persuade the informant to come forward. The next day, Castro and Fragozo met again; Fra-gozo revealed Sanchez’s identity and the recorded conversations.
That afternoon (7 November), Castro met with Sanchez, who had been fired by Castellano on 2 November. (According to Castellano, she was fired for her earlier referenced refusal to submit to the polygraph test regarding the missing deposits.) Sanchez, who had been prompted several times by Fragozo to release the recorded conversations, provided the tape to Castro and agreed to make a written statement that evening. In it, she discussed, among other things, her telephone conversations with Castellano and his alleged prior arson attempts.
After taking the statement from Sanchez, Castro concluded he had probable cause to believe Castellano was responsible for the fire. With the evidence he had gathered, Castro contacted the District Attorney, who prepared an affidavit. Both the District Attorney and Castro signed it; and Castro presented it to a magistrate, who issued an arrest warrant.
Castro executed the warrant at Castella-no’s office. Castro and a partner escorted Castellano to their patrol car, searched him, and took him to the police station. There, Castro booked and fingerprinted Castellano, before escorting him to the jail. Castellano was apparently released on bail shortly thereafter. The entire episode lasted a few hours.
An examining trial was held, at which Castro and Sanchez, but not Fragozo, testified. The judge found probable cause. The case was then presented to a grand jury, which indicted Castellano.
Castellano was convicted in Texas state court of arson and sentenced to five years probation. But, on his third state habeas application, the Texas Court of Criminal Appeals set aside the conviction and remanded to the trial court. Ex Parte Castellano, 863 S.W.2d 476 (Tex.Crim.App. 1993).
Apart from Castellano, the only witness at the habeas hearing had been one of his employees, Clemencia Jiminez, who testified that: Sanchez had told her of a plan to falsely accuse Castellano; and Sanchez and Fragozo had attempted to enlist her in that plan. In setting aside the conviction, the Court of Criminal Appeals accepted the habeas judge’s factual finding that Fragozo and Sanchez had perjured themselves during the criminal trial. E.q., id. at 481.
Subsequently, the District Attorney’s office dismissed the case. In this § 1983 malicious prosecution action that followed, the district court took judicial notice of the criminal case having been “dismissed for lack of sufficient evidence”. On the other hand, it granted a motion in limine, prohibiting reference to specific findings about Castellano’s habeas relief.
In 1994, Castellano filed this action in Texas state court as a common-law tort *715 action. In addition to Fragozo, Sanchez, and Castro, Castellano sued others, including the City of San Antonio. After § 1983 claims were added in early 1996, this action was removed to federal court. Castellano filed a second amended complaint; the district court interpreted it as premised entirely on a claim under § 1983 for malicious prosecution (§ 1983 malicious prosecution claim) and ruled the action would proceed solely on that basis. Cas-tellano filed a third amended complaint in late 1996.
The action was referred to a magistrate judge in early 1998. At that time, the only remaining defendants were Fragozo, Sanchez, Castro, and the City. Sanchez promptly moved for summary judgment, contending, inter alia: that Castellano presented a § 1983 malicious prosecution claim premised solely on Fourteenth Amendment substantive due process violations, but that Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), discussed extensively infra, had limited the availability of the claim to Fourth Amendment violations. (Of course, the Fourth Amendment is made applicable to state actors through the Fourteenth Amendment. References, however, in this dissent to the Fourteenth Amendment are to substantive due process.)
Sanchez’s summary judgment motion was granted in part and denied in part, the court ruling: Castellano could not base his claim on the Fourteenth Amendment; Castellano had based his claim, in part, on the Fourth Amendment, the constitutional basis for a § 1983 malicious prosecution claim; and his third amended complaint contained allegations supporting a Fourth Amendment violation.
Trial was held more than two years later, in April 2000. At the close of Cas-tellano’s evidence, defendants moved under Federal Rule of Civil Procedure 50(a) for judgment as a matter of law (JMOL), asserting, inter alia: there is no basis, as a matter of law, for a § 1983 malicious prosecution claim; and, alternatively, as the district court had held in its summary judgment ruling, the claim exists only for Fourth Amendment violations and, consequently, Castellano’s claim could survive only to the point of arrest. The district court denied the JMOL motions by Frago-zo, Sanchez, and Castro but granted that by the City, finding no evidence of a municipal policy or custom.
Fragozo, Sanchez, and Castro, the three remaining defendants, renewed their JMOL motions at the close of all the evidence. The motions were again denied.
As discussed infra, the magistrate judge instructed the jury not in terms of a Fourth Amendment violation, but in terms of a “constitutional right to due process”. He instructed that, to hold the defendants liable, the jury had to find, inter alia, that they had “intentionally committed acts that deprived [Castellano] of due process”. (It was stipulated that, as required for § 1983 liability, Fragozo and Castro had acted under “color of state law”.)
In answers to interrogatories, the jury found: Fragozo, but not Castro, while acting under color of law, “deprived Castella-no of his constitutional rights by committing malicious prosecution” (emphasis added); and Sanchez conspired with Fra-gozo, while he was acting under color of law, “with specific intent to deprive Cas-tellano of his constitutional rights ” (emphasis added). Damages had been submitted to the jury globally; it returned compensatory damages of $3 million, with $1.5 million attributed each to Fragozo and Sanchez. Additionally, finding Frago-zo and Sanchez had acted with malice, willfulness, or callous and reckless indifference, the jury awarded $500,000 in punitive damages — $250,000 each against *716 Fragozo and Sanchez. Judgment was entered in mid-April 2000.
Fragozo and Sanchez moved for JMOL or, in the alternative, for a new trial. They again asserted, inter alia: there is no basis, as a matter of law, for a § 1983 malicious prosecution claim, or at least not one premised on Fourteenth Amendment due process violations, which, according to them, were the violations Castellano had alleged. In rejecting that assertion and denying the motions, the magistrate judge referenced his earlier summary judgment order. That order, however, had held Cas-tellano’s claim survived only on Fourth — ■ not Fourteenth — Amendment grounds.
II.
Fragozo and Sanchez raise numerous issues touching every aspect of the trial. As noted, this dissent addresses only two: the confused (in fact, erroneous) precedent in our circuit allowing a § 1983 malicious prosecution claim; and the concomitant reversible error in the jury instructions.
Appellants’ primary points concern our limited jurisdiction in our federal system. What rights cognizable in federal court were violated; what damages flow from them? In essence, Castellano seeks recovery for the common-law tort of malicious prosecution; but, for his own reasons, he has pressed it under § 1983. (One reason given by Castellano at oral argument on appeal was his concern that, for a state-law malicious prosecution, Fragozo would have immunity under state law, leaving Sanchez as the only defendant.)
Our circuit precedent permits such a claim in some form. But, the understandable confusion, as noted in Gordy, over the bases for such a claim dressed in § 1983 garb, discussed in detail infra, may have been the reason for reversible error arising out of the jury instructions about it. In any event, this case should be reviewed en banc in order to clarify the elements of, and permissible damages for, a § 1983 malicious prosecution claim.
Toward that end, an extensive analysis of the relevant precedent follows. In this regard, for decisions subsequent to the earlier noted Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), my research reveals only one by this court where, as here, the malicious prosecution plaintiff prevailed on the merits in district court (Gordy ; judgment vacated). It appears that there has not been one decision in which damages of the size at issue here were awarded. Instead, our post-Albright precedent primarily concerns qualified immunity for § 1983 malicious prosecution claims.
A.
Section 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ... for redress....
42 U.S.C. § 1983 (emphasis added).
“The first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right ‘secured by the Constitution and laws.’ ” Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (quoting 42 U.S.C. § 1983). Obviously, “[n]ot every common law tort committed by state or local government officials is actionable under § 1983”. Brummett v. Camble, 946 F.2d 1178, 1183 (5th Cir.1991), cert. denied sub nom. 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992).
*717 Common-law malicious prosecution concerns “the groundless institution of criminal proceedings against the plaintiff’. Nesmith v. Alford, 318 F.2d 110, 118 (5th Cir.) (quoting William L. Prosser, Torts § 12 (2d ed.1955)), cert. denied sub nom. 375 U.S. 975, 84 S.Ct. 489, 11 L.Ed.2d 420 (1964). The tort “involve[s] a delicate balance between society’s interest in the efficient enforcement of the criminal law and the individual’s interest in freedom from unjustifiable and oppressive criminal prosecution”. Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex.1997). Its elements under Texas law — relevant to this action and consistent with the law of other States — are:
(1) a criminal prosecution was commenced against the plaintiff; (2) the prosecution was initiated or procured by the defendant; (3) the prosecution terminated in favor of the plaintiff; (4) the plaintiff was innocent; (5) the defendant lacked probable came to instigate the prosecution; (6) the defendant acted with malice in bringing about the prosecution; and (7) the plaintiff suffered damages as a result of the prosecution.
Rodriguez v. Wal-Mart Stores, Inc., 52 S.W.3d 814, 820 (Tex.App.—San Antonio 2001) (emphasis added); Thrift v. Hubbard, 974 S.W.2d 70 (Tex.App.—San Antonio 1998, review denied); see also Richey, 952 S.W.2d at 516; Browning-Ferris Indus., Inc. v. Lieck, 881 S.W.2d 288, 292-93 (Tex.1994).
While related to other common-law torts, especially abuse of process, malicious prosecution is distinguished by its focus on the institution — or, in Texas common-law terms, “initiation” or “procurement” — of criminal proceedings. Whereas the essence of abuse of process is “misusing! ] or misapplying process justified in itself for an end other than that which it was designed to accomplish”, the gist of malicious prosecution is “commencing an action or causing process to issue without justification”. W. Page Keeton et al., Prosser and Keeton on Torts § 121, at 897 (5th ed.1984) (emphasis added). That distinction is well established in Texas law. “It is critical to a cause of action for abuse of process that the process be improperly used after it has been issued. If wrongful intent or malice caused the process to be issued initially, the claim is instead one for malicious prosecution.” Bossin v. Towber, 894 S.W.2d 25, 33 (Tex.App.—Houston 1994, writ denied) (internal citations omitted; second emphasis added). A consequence of the distinction is that, for abuse of process, a plaintiff need not prove the proceeding terminated in his favor or was instigated without probable cause. See Prosser, § 121, at 897.
Although process is usually “caused” to issue as a result of a charge filed by the malicious prosecution defendant, a person may be liable for “procuring” a criminal prosecution “if [as claimed in this case] his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred”. Lieck, 881 S.W.2d at 293 (internal quotation marks omitted). Although ordinarily “[a] person does not procure a criminal prosecution-when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury”, liability may lie where, as claimed in this action, “the person provides information which he knows is false”. Id. (internal quotation marks omitted).
Malicious prosecution is also a close cousin of false imprisonment. The critical distinction is that malicious prosecution generally lies where the plaintiff was detained pursuant to legal process; false imprisonment, where the plaintiffs arrest was accomplished without process issuing (e.g., without a warrant). See Heck v. *718 Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (“The common-law cause of action for malicious prosecution ..., unlike the related cause of action for false arrest or imprisonment, ... permits damages for confinement imposed pursuant to legal process.”).
Texas has long observed this difference. “Hence the distinction at common law between the action for false imprisonment and that for malicious prosecution[:] The first could be maintained only when the arrest was made without legal process; and the latter when the process of the law had been perverted and improperly used without probable cause and for a malicious purpose.” Hubbard v. Lord, 59 Tex. 384, 385-86 (1883) (internal citations omitted). Of course, the situation might arise where a detention effected without process is followed by an improper prosecution. In such a situation, “the plaintiff may be required to assert both false imprisonment and malicious prosecution to recover all his damages”. Prosser, § 119, at 886.
Again, the interest at issue in common-law malicious prosecution, as the name of the claim makes clear, is “the individual’s interest in freedom from unjustifiable and oppressive criminal prosecution ”. Richey, 952 S.W.2d at 517 (emphasis added). In short, it reaches far beyond an improper arrest — a target of the Fourth Amendment. Accordingly, “[t]he elements of damage in cases of malicious prosecution are physical injury, injury to feelings and reputation, injury to property, loss of time, and expenses”. Equitable Life Assurance Soc’y of the U.S. v. Lester, 110 S.W. 499, 502 (Tex.Civ.App.1908) (emphasis added). Moreover, “[a] suit for malicious prosecution so far partakes of the nature of a criminal proceeding as to admit of the recovery of exemplary damages in the nature of a penalty”. McManus v. Wallis, 52 Tex. 534, 547 (1880).
Our court has recognized § 1983 malicious prosecution claims. And, it has suggested that the common-law tort of malicious prosecution, by itself, may somehow amount to deprivation of a constitutional right. See, e.g., Gordy, 294 F.3d at 725 (cited by majority). But, our court has not clearly identified the federal right implicated by malicious prosecution.
In Shaw v. Garrison, 467 F.2d 113 (5th Cir.), cert. denied, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972), our court recognized a claim akin to the current one for § 1983 malicious prosecution. Shaw had been acquitted in a state criminal prosecution for conspiracy to assassinate President Kennedy. Id. at 114. In that proceeding, Shaw testified he did not know his alleged co-conspirators. Id. After Shaw’s acquittal, the State charged he had lied in that regard. Id.
While the perjury prosecution was pending, Shaw sought federal injunctive relief under, inter alia, § 1983. Id. at 115. The district court enjoined the perjury prosecution, finding it “was brought in bad faith and for purposes of harassment”. 328 F.Supp. 390, 400 (E.D.La.1971). On appeal, our court recognized a “federal right to be free from bad faith prosecutions”, holding that showing such prosecution “is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in Younger [v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)]”.[1] 467 F.2d at 120. Accordingly, our court affirmed the injunction. Id. at 122.
Shaw did not identify the source or nature of the constitutional right violated by *719 a “bad faith prosecution”. Subsequent case law, however, seemed to identify Fourteenth Amendment due process. In Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254 (5th Cir.1984), our court had to determine whether the § 1983 claim recognized in Shaw survived Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Wheeler characterized Gerstein as holding
that the Fourth Amendment requires of the states a judicial or neutral determination of probable cause to arrest as a prerequisite for extended restraint of liberty following arrest, and specifically that a prosecutor’s decision to prosecute is not a constitutionally sufficient determination of probable cause.
Wheeler, 734 F.2d at 258. Wheeler recognized that, under Gerstein, “this Fourth Amendment protection is attendant on ar-. rest and detention alone and does not bear on the decision to prosecute”. Id. at 259 (emphasis added). Therefore, our court was left to answer what level of suspicion, if any, is requisite for a prosecutor’s decision to charge. Id.
After exploring the text of the Fourth Amendment, policy considerations, and Gerstein, our court concluded: “[T]he Fourteenth Amendment imposes a duty on state prosecutors to charge only upon ascertaining probable cause”. Id. at 260 (emphasis added).[2] Because Shaw simply “enjoined a state prosecution for perjury on the ground that it was brought ‘in bad faith’ — i.e. without probable cause ”, id. at 258 (emphasis added), Wheeler held a § 1983 malicious prosecution claim survived Gerstein. Id. at 260.
Brummett v. Camble, 946 F.2d 1178 (5th Cir.1991), cert. denied, 504 U.S. 965, 112 S.Ct. 2323, 119 L.Ed.2d 241 (1992), cast some doubt on a § 1983 malicious prosecution claim. A- footnote to that opinion, which otherwise recognized the action as part of our precedent, questioned “[wjhether Wheeler would survive the Supreme Court’s recent attempts to predicate constitutional rights on a more textual footing”, because Wheeler had rested “on the implied constitutional right to have charges brought only upon probable cause”. Id. at 1181 n. 2 (emphasis added). That footnote clarified that “Wheeler would, however, clearly survive to the extent that a malicious prosecution caused a plaintiffs pretrial, detention or otherwise infringed specific constitutional guarantees”. Id.
At long last, the earlier cited Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), provided some guidance. It- addressed whether violation of Albright’s claimed Fourteenth Amendment substantive due process right to be free of prosecution without probable cause — essentially the same right on which our court premised -its holding in Wheeler — could serve as the basis for; a § 1983 malicious prosecution claim. Id, at 268, 114, S.Ct. 807.
Upon becoming aware of a warrant for his arrest on a drug-related charge, Al- *720 bright surrendered to Officer Oliver and was released after posting bond. Id. His release was conditioned on his agreeing not to leave the state without court permission. Id. At a preliminary hearing, at which Officer Oliver allegedly gave misleading testimony, the state court found probable cause to try Albright. Id. at 269, 279, 114 S.Ct. 807. Subsequently, the case was dismissed pretrial, because the charge did not state an offense under state law. Id. at 269, 114 S.Ct. 807.
Albright then brought an action under § 1983 against the Officer, claiming he had “deprived him of substantive due process under the Fourteenth Amendment — his ‘liberty interest ’ — to be free from criminal prosecution except upon probable cause”. Id. at 269, 114 S.Ct. 807 (emphasis added). The complaint also presented a common-law malicious prosecution claim against the Officer. Id. at 269 n. 2, 114 S.Ct. 807.
A plurality opinion, written by Chief Justice Rehnquist and joined by Justices O’Connor, Scalia, and Ginsburg, began by surveying the approaches circuits had taken for § 1983 malicious prosecution claims. Noting that “[m]ost of the lower courts recognize some form of malicious prosecution action under § 1983”, the plurality pinpointed the disagreement as “whether malicious prosecutions, standing alone, can violate the Constitution”. Id. at 270 n. 4, 114 S.Ct. 807 (emphasis added). It stated that the Third Circuit had provided for the most expansive claim, “hold[ing] that the elements of a malicious prosecution action under § 1983 are the same as the common-law tort of malicious prosecution”. Id. (citing Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir.1988)). “Other Circuits, however, require[d] a showing of some injury or deprivation of a constitutional magnitude in addition to the traditional elements of common-law malicious prosecution.” Id. (emphasis added). Citing our court’s opinion in Sanders, supra note 3, the plurality characterized our circuit’s position as more akin to that of the Third Circuit.
The plurality reiterated that “Section 1983 ‘is not itself a source of substantive rights,’ but merely provides ‘a method for vindicating federal rights elsewhere conferred’ ”. Id. at 271, 114 S.Ct. 807 (quoting Baker, 443 U.S. at 144 n. 3, 99 S.Ct. 2689). Albright had claimed violation of a “substantive due process right to be free of prosecution without probable cause”, id.; but, “[wjhere a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims”. Id. at 273, 114 S.Ct. 807 (citation and internal quotation marks omitted; emphasis added). Because “[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it”, the plurality concluded that “substantive due process ... can afford [Albright] no relief”. Id. at 274, 275, 114 S.Ct. 807. The plurality refused to decide whether Albright’s claim would have succeeded had it been framed to implicate a Fourth Amendment violation. Id. at 275, 114 S.Ct. 807.
In addition to joining the plurality opinion, Justice Scalia separately emphasized: “[I]t [was] unlikely that the procedures constitutionally ‘due,’ with regard to an arrest, consist of anything more than what the Fourth Amendment specifies”; and, with the exception of certain “long established and narrowly limited” substantive protections incorporated by the Court into the Fourteenth Amendment, the Due Process Clause does not “guarantee[ ] certain (unspecified) liberties”. Id. at 275, 114 S.Ct. 807 (Scalia, J., concurring).
*721 Justice Kennedy, whom Justice Thomas joined, concurred in the judgment but wrote separately because he understood “Albright’s due process claim concern[ed] not his arrest but instead the malicious initiation of a baseless criminal prosecution against him”. Id. at 281, 114 S.Ct. 807 (Kennedy, J., concurring in the judgment). This notwithstanding, and significantly for purposes of Castellano’s action, Justices Kennedy and Thomas “agree[d] with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process”. Id. (emphasis added). Nevertheless, in the light of precedent that “a state actor’s random and unauthorized deprivation of th[e] interest [in freedom from malicious prosecution] cannot be challenged under [§ ] 1983 so long as the State provides an adequate postdeprivation remedy”, id. at 284, 114 S.Ct. 807 (citing Parrott v. Taylor, 451 U.S. 527, 535-44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)), and because state law afforded Albright an action for malicious prosecution, Justices Kennedy and Thomas saw “neither need nor legitimacy to invoke § 1983”. Id. at 286, 114 S.Ct. 807.[3]
Justice Souter also concurred in the judgment but wrote separately, in part to emphasize that “[t]here may indeed be exceptional cases where some quantum of harm occurs in the interim period after groundless criminal charges are filed but before any Fourth Amendment seizure”. Id. at 291, 114 S.Ct. 807 (Souter, J., concurring in the judgment). Still, in concluding that Albright had not established a substantive due process violation, Justice Souter agreed with the plurality that Al-bright’s claim “present[ed] no substantial burden on liberty beyond what the Fourth Amendment is generally thought to redress already”. Id. at 288-89, 114 S.Ct. 807.
In addition to joining the plurality opinion, Justice Ginsburg opined that Albright would have stated a claim had he pressed a Fourth Amendment, rather than a Fourteenth Amendment substantive due process, right. Id. at 276-77, 114 S.Ct. 807 (Ginsburg, J., concurring). She opined that Albright may have abandoned a Fourth Amendment avenue of approach because he
feared that courts would narrowly define the Fourth Amendment’s key term “seizure” so as to deny full scope to his claim. In particular, he might have anticipated a holding that the “seizure” of his person ended when he was released from custody on bond, and a corresponding conclusion that Oliver’s allegedly misleading testimony at the preliminary .hearing escaped Fourth Amendment interdiction.
Id. at 277, 114 S.Ct. 807 (emphasis added).
For Justice Ginsburg, however, the duration of a seizure might “continue even after release from official custody”, because the released defendant may be: haled into court on the State’s command; required to obtain permission before traveling outside the court’s jurisdiction; and subjected to diminished employment prospects, reputational harm, and the financial/emotional strain of preparing a defense. Id. at 277-78, 114 S.Ct. 807. In that light, the allegedly misleading testimony by Albright’s arresting officer at the preliminary hearing “served to maintain and reinforce the unlawful haling of Al-bright into court, and so perpetuated the Fourth Amendment violation”. Id. at 279, *722 114 S.Ct. 807. The Court, however, has never adopted such an expansive concept of Fourth Amendment “seizure”.
Nor have our post-Albright decisions clarified the contours of a § 1983 malicious prosecution claim. Johnson v. La. Dep’t of Agric., 18 F.3d 318 (5th Cir.1994), concerned a § 1983 malicious prosecution claim for a First Amendment deprivation. Our court noted: “The Supreme Court ... recently held [in Albright ] that malicious criminal prosecution, if actionable in constitutional law, should be governed by the Fourth Amendment rather than substantive due process, with its ‘scarce and open-ended’ ‘guideposts’ ”. Id. at 320 (quoting Albright, 510 U.S. at 275, 114 S.Ct. 807). Noting that “it is an even more complex question whether and on what basis a First Amendment claim of malicious prosecution can be made”, our court stated: “Whether the Constitution comprehends any such claim is far from clear”. Id. Regardless, our court held that, at a minimum, “if the First Amendment protects against malicious prosecution, Johnson must not only allege a deprivation of a constitutional right, but must also establish all of the elements of the common law tort action”. Id. (emphasis added). Because Johnson had not satisfied the favorable-prosecution-termination element of the common-law tort, the district court’s dismissal was upheld.
Another of our early post-Albright opinions considered the validity of, but did not reach the merits for, a § 1983 malicious prosecution claim. In so doing, our court explained: “Albright held that pre-trial deprivations of liberty, such as malicious prosecution, are not actionable under the Fourteenth Amendment, but left open the possibility that such claims would be actionable under the Fourth Amendment”. Eugene v. Alief Indep. Sch. List., 65 F.3d 1299, 1303 (5th Cir.1995) (emphasis added), cert. denied sub nom., 517 U.S. 1191, 116 S.Ct. 1680, 134 L.Ed.2d 782 (1996).
Eugene then observed in dictum: “This circuit has explicitly held that malicious prosecution, false arrest and bodily harm are actionable under Section 1983 because they violate the Fourth and Fourteenth Amendments”. Id. For that proposition, our court cited Sanders, supra note 3. Sanders, a pre-Albright case, recognized that malicious prosecution “implieate[s] the constitutional guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause”. Sanders, 950 F.2d at 1159 (emphasis added; quoting Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir.1988)).
Eugene failed, however, to reiterate this qualifying language. Moreover, Eugene recognized the right against malicious prosecution as “clearly established” under the Fourth Amendment but justified that assertion only by citing Shaw, supra, the earlier-discussed Fourteenth Amendment, pre-Albright ease. See Eugene, 65 F.3d at 1305; see also Kerr v. Lyford, 171 F.3d 330, 342 & n. 8 (Jones, J., specially concurring) (questioning the Eugene opinion).
Our court made similarly questionable conclusions in Evans v. Ball, 168 F.3d 856 (5th Cir.1999). There, our court had to decide, inter alia, whether a plaintiff claiming “prosecution unsupported by probable cause” had, for purposes of defeating qualified immunity, stated a violation of a clearly established constitutional right. Id. at 862 n. 9. Our court construed the claim as one for malicious prosecution, because “a prosecution that is unsupported by probable cause but does not rise to the level of malicious prosecution is not a clearly established constitutional violation”. Id. It observed, quite correctly, that “the text of the Fourth Amendment does not support the proposition that a *723 prosecution not based on probable cause is a constitutional violation”. Id. (emphasis added). It failed, however, to consider whether the text of the Fourth Amendment supports the proposition that a malicious prosecution is necessarily a constitutional violation. Instead, citing a pre-Albright opinion (as had Eugene), it simply reiterated “that malicious prosecution may be a constitutional violation, but only if all of its common law elements are established”. Id. (citing Brummett, 946 F.2d at 1183).
Next in our significant post-Albright decisions was Kerr v. Lyford, 171 F.3d 330 (5th Cir.1999). Kerr affirmed the summary judgment awarded § 1983 defendants; but, the majority opinion, citing Eugene, spoke of a “longstanding recognition of a Fourth Amendment right to be free from malicious prosecution”. Id. at 339. Again, as had Eugene, the Kerr majority opinion failed to mention that this “longstanding recognition” applied only where “the individual complains of an arrest, detention, and prosecution without probable cause”.[4] See supra note 2.
The special concurrence in Kerr, joined by another member of the panel, was our court’s first attempt, in the light .of Al-bright, to address the problems of allowing a § 1983 malicious prosecution claim. After noting that “the Albright plurality, rather than endorsing a Fourth Amendment tort of malicious prosecution, declined to address the issue”, the special concurrence emphasized: “[E]ven if Al-bright left room for such a claim under the Fourth Amendment, there is a significant difference between predicating the cause of action on the Fourth Amendment and the Fourteenth”. Kerr, 171 F.3d at 342-43 (Jones, J., concurring). As the special concurrence noted, this fact is evident in the very need to decide Albright: “On the most superficial level, if the grounds for the claim under the Fourth and Fourteenth Amendments were equivalent, there would have been no need to distinguish between those amendments in Albright ”. Id. at 343. Finally, and most significantly, it observed:
[T]he tort of malicious prosecution fits uneasily within the Fourth Amendment. That amendment proscribes unreasonable searches and seizures and has been held to prohibit arbitrary law enforcement actions up until the time of arraignment. To justify a Fourth Amendment malicious prosecution claim, then, one has to extend the period of “seizure” past arraignment.
Id. (emphasis added).[5] This “uneasy fit” is again discussed in Gordy, 294 F.3d at 725-27.
*724 The key seizure/arraignment incongruity noted in the Kerr special concurrence is hardly the lone peculiarity of recognizing a § 1983 malicious prosecution claim. As Justice Ginsburg noted in her Albright concurrence,
Albright’s reliance on a “malicious prosecution” theory, rather than a Fourth Amendment theory, is anomalous. The principal player in carrying out a prosecution — in the formal commencement of a criminal proceeding — is not police officer but prosecutor. Prosecutors, however, have absolute immunity for their conduct. Under Albright’s substantive due process theory, the star player is exonerated, but the supporting actor is not.
Albright, 510 U.S. at 279 n. 5, 114 S.Ct. 807 (Ginsburg, J., concurring) (internal quotations and citations omitted).
Yet another peculiarity concerns the limitations period for a § 1983 malicious prosecution claim. If the post-Albright justification for a § 1983 malicious prosecution claim is the Fourth Amendment, then some might maintain that the limitations period should run from the date of arrest, rather than from the occurrence of the last element of the malicious prosecution tort (termination of the prosecution in plaintiffs favor). See id. at 280 & n. 6, 114 S.Ct. 807 (Ginsburg, J., dissenting). But, as have some other circuits, our court has held, without acknowledging the basis for debate, that the limitations period accrues as of the prosecution’s termination. See Eugene, 65 F.3d at 1306.[6]
Of course, because the favorable termination is an element of a § 1983 malicious prosecution claim, accrual at that point is understandable — certainly in theory. On the other hand, if the constitutional basis for this § 1983 claim is the underlying seizure (arrest), it may occur any time from shortly before the favorable termination to years before it, as in Castellano’s *725 situation. Instances in which the arrest is far removed from the favorable termination, especially because of the possible resulting loss of evidence concerning the arrest, vividly demonstrate the “uneasy fit” of malicious prosecution under § 1983, based on the Fourth Amendment.[7]
But perhaps the most troubling — and thus far overlooked — problem with a § 1983 malicious prosecution claim concerns probable cause. One of the earlier listed elements of common-law malicious prosecution is that “the defendant lacked probable cause to instigate the prosecution”. Rodriguez v. Wal-Mart Stores, Inc., 52 S.W.3d 814, 820 (Tex.App.—San Antonio 2001); Thrift v. Hubbard, 974 S.W.2d 70 (Tex.App.—San Antonio 1998, review denied).
As noted, Texas law dictates the common-law elements in the present case and is not atypical on this particular point. The requisite lack of probable cause is defined as “the [lack of the] existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the 'prosecutor [complainant], that the person charged was guilty of the crime for which he was prosecuted”. Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997) (alteration in original; emphasis added) (quoting Akin v. Dahl, 661 S.W.2d 917, 921 (Tex.1983)); Brown v. Nationsbank Corp., 188 F.3d 579, 586 (5th Cir.1999) (same), cert. denied sub nom. 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1004 (2000). “[T]he probable cause inquiry focuses only on the actions of the complainant, based upon his perspective of the facts at the time the report was made, and not on the subsequent actions of third-parties or information discovered after the fact”. Thrift, 974 S.W.2d at 79 (emphasis added).
On the other hand, for a Fourth Amendment seizure (arrest), the relevant touchstone post-Albright, the probable cause inquiry differs on several fundamental, and profoundly important, levels.
Probable cause to arrest an individual exists when the facts and circumstances *726 within the arresting officer’s personal knowledge, or of which he has reasonably trustworthy information, are sufficient to occasion a person of reasonable prudence to believe an offense has been committed. A magistrate determines that probable cause exists from the totality of circumstances presented to him in the warrant application. We review his decision, and the police officer’s decision to seek an arrest warrant, by evaluating the facts available to the officer at the time he submitted the application.
Bennett v. Grand Prairie, 883 F.2d 400, 404 (5th Cir.1989) (emphasis added; footnotes, citations, and internal quotation marks omitted).
Several important features of this description distinguish Fourth Amendment probable cause from the probable cause at issue for common-law malicious prosecution. First, the former assesses probable cause vel non from the facts and circumstances within the knowledge of the arresting officer — not the complainant. Second, it measures probable cause vel non as of the time an application for the warrant is submitted — not when the complainant makes his report. In short, the Fourth Amendment probable cause inquiry is fundamentally distinct and separate from the probable cause inquiry for common-law malicious prosecution.[8]
At the very least, these incongruities cast doubt on whether, as a matter of law, a § 1983 malicious prosecution claim can exist. Nevertheless, our precedent compels recognizing the claim in some form. Restated, this panel is saddled with an anomalous claim. I reiterate the observation in the Kerr special concurrence: Al-bright did not endorse a Fourth Amendment tort of malicious prosecution. See Kerr, 171 F.3d at 342 (Jones, J., concurring); see also Johnson, 18 F.3d at 320 (“Significantly, the [Albright] Court expressed no view whether such a claim would succeed under the Fourth Amendment.”); 1A SCHWARTZ, note 10, at 322 (noting that the various Albright opinions “add[] up to a fairly strong sentiment against constitutionalizing malicious prosecution” (emphasis added)). However, bound by our precedent recognizing a § 1983 malicious prosecution claim, only en banc review (or, of course, a decision by the Supreme Court) can settle whether such a claim can exist. As stated, it is my hope — and request — that this ease be the vehicle for doing so.
The task at present, then, is to ensure that, for the § 1983 malicious prosecution claim presented here, this panel maintains — to the extent possible — consistency with the dictates of § 1983, the Fourth Amendment, Albright, and our precedent. The latter requires a § 1983 malicious *727 prosecution plaintiff to prove the common-law tort elements, including the defendant’s lacking probable cause at the time he reported the crime. Section 1983 requires proving violation of a federal right. And, Albright seems to require that, in a situation such as Castellano’s, the right violated be one secured by the Fourth Amendment.[9]
Finally, for a Fourth Amendment violation, the plaintiff must prove the arresting officer lacked probable cause at the time he applied for a warrant. In. sum, as discussed further below, it would seem that a § 1983 malicious prosecution plaintiff must allege and prove, inter alia, two unique instances of a lack of probable cause.
This approach — requiring proof of both the common-law tort elements and a Fourth Amendment violation — is not unique. Our court recently took that approach in Price v. Roark, 256 F.3d 364 (5th Cir.2001), noted supra. Officer Roark arrested Price on charges of a license tag violation and arson. Price was convicted for the tag violation; the arson charge was dropped. Id. at 367. He filed § 1983 false arrest and malicious prosecution claims relating to the arson charge. Offi *728 cer Roark took an interlocutory appeal from the denial of qualified immunity. Id. at 368.
In addressing the false arrest claim, our court held there was probable cause concerning the tag violation and, as a result, probable cause existed for the arrest. Id. at 369-70. As for the malicious prosecution claim, it noted: “While we have recognized a § 1983 cause of action for malicious prosecution, ‘it is fundamental to our federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under § 1983 must show deprivation of a federal right.’ ” Id. at 370 (citing Nesmith v. Taylor, 715 F.2d 194, 196 (5th Cir.1983)). Accordingly, our court held: “[T]o succeed on [his] § 1983 malicious prosecution suit, Price must show that he was exposed to an unreasonable search or seizure in violation of the Fourth Amendment ”. Id. (emphasis added). But, because the arrest was supported by probable cause for the tag violation, “Price suffered no violation of his Fourth Amendment rights”. Id. at 367. Accordingly, Officer Roark was held entitled to qualified immunity.
Pre-Price, a similar position was taken in Johnson, discussed supra. Johnson involved a claim for malicious prosecution in violation of First Amendment rights. Our court stated, without deciding whether such a claim is cognizable under the Constitution, that, “at the very least, if the First Amendment protects against malicious prosecution, [a plaintiff] must not only allege a deprivation of a constitutional right, but must also establish all of the elements of the common law tort action”. Johnson, 18 F.3d at 320 (emphasis added).
As discussed in Gordy, 294 F.3d at 725-26, other circuits take this two-pronged approach. See, e.g., Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.) (“[O]ur circuit takes the common law elements of malicious prosecution as the ‘starting point’ for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a constitutional violation [of] the Fourth Amendment’s right to be free from unreasonable seizures.” (emphasis added)), cert. denied, 519 U.S. 871, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996); Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir.1996) (“To state a claim for malicious prosecution under section 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty.”); Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir.1995) (“Once a plaintiff presents a claim of malicious prosecution under § 1983, the court must engage in two inquiries: whether the defendant’s conduct was tortious; and whether the plaintiffs injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment.”), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). But see Frantz v. Village of Bradford, 245 F.3d 869, 874-75 (6th Cir.2001) (‘We unanimously reject the reasoning of courts which have relied on the state law elements of malicious prosecution. We hold that establishing a § 1983 cause of action requires a constitutional violation and cannot differ depending on the tort law of a particular state.”); Lambert v. Williams, 223 F.3d 257, 262 (4th Cir.2000) (“[T]here is no such thing as a ‘§ 1983 malicious prosecution’ claim. What we [have] termed a ‘malicious prosecution’ claim ... is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution — specifically, the requirement that the prior proceeding terminate favorably to the plaintiff’.), cert de *729 nied, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001).
The majority claims:
[E]ven if this court were to require independent proof of a violation of the Fourth Amendment in addition to proof of the tort of malicious prosecution, the analysis in this case would not change as Castellano established a violation of his Fourth Amendment rights with proof that he was seized and convicted by virtue of fraudulent evidence fabricated by the defendants — one of whom was a police officer.
Maj. Op. at 699 n. 17. In any event, in light of the foregoing discussion, this case turns on the erroneous jury instructions.
B.
The jury instructions — based on the Fourteenth, rather than the applicable Fourth, Amendment — are a basis for reversible error. Fragozo and Sanchez premise reversible error on the jury’s being instructed in terms of a Fourteenth Amendment right to “due process”, instead of a Fourth Amendment right to be free from unreasonable seizure. In pertinent part, the instruction provided:
Castellano claims that Alfred Castro and Chris Fragozo, while acting under color of law, intentionally violated his constitutional right to due process by maliciously prosecuting him for the criminal offense of arson. Castellano further claims that Maria Sanchez, as an individual, intentionally violated the same constitutional right.
To prove such violation, Castellano must prove each of the following by a preponderance of the evidence:
(1) The defendants intentionally committed acts that deprived him of due process;
[T]o prove the defendants intentionally committed acts depriving him of due process, Castellano must prove they maliciously prosecuted him for the criminal offense of arson. To prove this claim, Castellano must establish by a preponderance of the evidence each of the [common-law elements of malicious prosecution] ....
(Emphasis added.)
As discussed by the majority, neither Sanchez nor Fragozo objected to the instruction. Ordinarily, as also discussed by the majority, that failure would permit review only for plain error. Fed.R.Civ.P. 51; e.g., Tompkins v. Cyr, 202 F.3d 770, 783 (5th Cir.2000). Under that standard, our court may only correct an error that is “clear” or “obvious” and affects substantial rights. See United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); United States v. Calverley, 37 F.3d 160, 162-64 (5th Cir.1994) (en banc), cert. denied, 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995). Even then, our court retains discretion whether to correct such an error; generally, we will do so only where the error “seriously affect[s] the fairness, integrity or public reputation of judicial proceedings”. Olano, 507 U.S. at 732, 113 S.Ct. 1770 (internal quotation marks omitted; alteration in original); see also Calverley, 37 F.3d at 164. The burden is on the party charging error, see Tompkins, 202 F.3d at 779; and “we are exceedingly deferential to the trial court”, id. at 784.
Castellano urges plain error review; and the majority applies that standard. No authority need be cited, however, for the rule that the reviewing court, not the parties, determines its standard of review.
Motions by Fragozo and Sanchez, and corresponding rulings by the district court, as well as the instructions proposed by Fragozo and Sanchez, place this standard *730 of review issue in a most unusual — perhaps unique — posture. For the reasons that follow, it is not clear whether this panel should review only for plain error or, instead, under the more lenient standard applied when an objection was properly made in the trial court to the instruction at issue on appeal.
As noted, in August 1998, long in advance of the April 2000 trial, the district court granted Sanchez summary judgment on whether the § 1983 malicious prosecution claim involved Fourteenth Amendment “due process” or Fourth Amendment “seizure”, holding, inter alia:
Claims of malicious prosecution are not actionable under the Fourteenth Amendment. Albright ...; Eugene .... Claims of malicious prosecution are actionable, however, under the Fourth Amendment. Id. ... Rather, the Fourteenth Amendment simply makes applicable to the states the protections of the Fourth Amendment, which provides an explicit textual source of constitutional protection for a malicious prosecution claim. Smart v. Bd. Of Trustees of the Univ. Of Illinois, 34 F.3d 432, 434 (7th Cir.1994).
No authority need be cited for the fact that, unless and until the district court revisited and revised its summary judgment holding, that holding, for that issue, was the law of the case. The holding was never explicitly altered by the district court. But, the challenged instruction utilizing due process implicitly, and obviously, altered it. Needless to say, it would seem that, had the district court intended such a change, it would have made it explicitly.
The parties’ proposed instructions were included with the pretrial order, filed approximately two months before trial. Notwithstanding the summary judgment holding that Fourteenth Amendment due process was not in play, Castellano’s proposed instruction spoke, inter alia, of “[t]he right not to be deprived of liberty without due process of law” in addition to “[t]he right not to be subjected to an unreasonable seizure”. Castro’s proposed instructions also keyed on the “right not to be deprived of liberty without due process of law”.
In short, Castellano and Castro’s proposed instructions are totally at odds with the law of the case established by the earlier summary judgment holding. My review of the record reveals no reason for this.
On the other hand, the instructions proposed by Sanchez, and adopted by Frago-zo, spoke of being “deprived of liberty” in violation of the Constitution, without linking the deprivation to the “without due process” qualifier. The Fourth Amendment, however, was not mentioned. Consequently, Sanchez and Fragozo’s proposed instructions could be read to fall under either the Fourth or Fourteenth Amendment, because, of course, the Fourteenth Amendment proscribes being “deprive[d] of ... liberty ... without due process of law”, while the Fourth Amendment proscribes certain types of “seizures”' — which equates with “deprivation^] of liberty”.
On balance, Sanchez and Fragozo’s proposed instructions fall much more under the Fourth, than the Fourteenth, Amendment, especially in the light of the controlling case law and, even more so, because of the law of the case. Accordingly, I do not consider their proposed instructions to have constituted “invited error”. E.g., Flores v. Cameron County, 92 F.3d 258, 270 n. 9 (5th Cir.1996) (noting that when the district court “derive[s] [an] instruction ... from [a party’s] proposed jury instructions” and that party does “not object to th[e] instruction”, “the invited error doctrine ordinarily ... precluded] ... review *731 of th[e] instruction”). (In any event, as discussed infra,. their proposal was not utilized by the magistrate judge. As quoted supra, he used “violated [Castellano’s] constitutional right to due process by maliciously prosecuting him”, (emphasis added))
At trial, however, the JMOL motions referenced the fact that, as the district court had held almost 28 months earlier, the Fourth, not the Fourteenth, Amendment was in play. After Castellano presented his case, the City, citing Kerr, especially the concurring opinion discussed supra, urged in support of JMOL that “there is no malicious prosecution cause of action as a matter of law under Section 1983”, having noted that, under Albright, such a claim did not lie under the Fourteenth Amendment. Fragozo joined in expressing doubt whether a malicious prosecution claim can be presented under § 1983.
Finally, through Sanchez, the court was then reminded about its law of the case established by its summary judgment holding — specifically that the court
had clearly pointed out that malicious prosecution under the 14th Amendment does not exist, and indicated that it exists under the Fourth Amendment. And so this case survived at least to proceed to trial under that particular theory.
(Emphasis added.) And, citing the concurring opinion in Kerr, Sanchez noted the question of whether challenged actions subsequent to arrest “survive[d] under the [§ 1983] malicious prosecution cause of action”.
In response, Castellano made no mention of the defendants’ contentions regarding Fourteenth Amendment due process not being applicable. Nor did he mention the summary judgment holding. (Castel-lano’s new counsel did not appear in the case until approximately nine months after that ruling; but, of course, he had constructive, if not actual, knowledge of it.) Again, the record does not reveal why, in opposing JMOL, Castellano made no mention of that controlling summary judgment holding.
In ruling on the motions, the court granted the City’s but denied those, of the remaining Defendants. Without explanation, it denied judgment for Fragozo and Sanchez. Restated, the magistrate judge made no mention of the Fourth versus Fourteenth Amendment issue.
After the remaining Defendants presented evidence, and prior to the case going to the jury, those Defendants, during the charge conference, renewed their JMOL motions, being allowed by the court to adopt their earlier arguments. The motions were summarily denied.
The charge, apparently prepared by the magistrate judge, makes no mention of Fourth Amendment seizure. Instead, as quoted earlier, it speaks of Fourteenth Amendment “due process”. At the charge conference, however, no reference, much less objection, was made to such use of Fourteenth Amendment “due process” instead of Fourth Amendment “seizure”.
As noted, the jury found for Castro. Post-verdict, Sanchez and Fragozo moved for JMOL or, in the alternative, for a new trial. One basis urged for JMOL, as noted by the district court, was “because there is no constitutional cause of action for malicious prosecution”. Citing its earlier summary judgment holding, the court stated it had
already ruled on Sanchez’s and Frago-zo’s contentions regarding this issue. (Docket no. 132 [the summary judgment ruling]). The parties do not present any new evidence or argument to per *732 suade the Court to change its position on this issue.
But, again, the court failed to explain why it had instructed the jury on due process when it had held the § 1988 claim was grounded in the Fourth, not the Fourteenth, Amendment.
In the light of the foregoing events, this panel is faced with many interesting and perplexing procedural questions, about which there is not a great deal of case law. Does the law of the case trump the failure to object? As permitted in certain instances by our circuit precedent, see, e.g., Thompson & Wallace of Memphis, Inc. v. Falconwood Corp., 100 F.3d 429, 432 (5th Cir.1996), did the arguments presented in support of the pre-verdict JMOL motions constitute sufficient objections to the charge, especially since, during the charge conference, the court allowed the renewed JMOL motions to simply adopt the arguments made only a few hours earlier, prior to the brief evidence presented by the remaining Defendants?
These questions need not be addressed. Assuming the majority is correct that we review only for plain error, there is reversible error. Of course, the instructions must be viewed as a whole. See United States v. Peterson, 244 F.3d 385, 395 (5th Cir.), cert. denied, 534 U.S. 857, 122 S.Ct. 133, 151 L.Ed.2d 86 (2001), and cert. denied, 534 U.S. 861, 122 S.Ct. 142, 151 L.Ed.2d 94 (2001).
It was “clear” or “obvious” error to instruct on Fourteenth Amendment due process, because the district court’s summary judgment holding precluded that ground. Moreover, in the light of Albright and our subsequent case law interpreting it, the identification of the “right to due process” as the constitutional right at issue in a § 1983 malicious prosecution claim was an obviously incorrect statement of the law.
The next inquiry is whether this error affected the substantial rights of Fragozo and Sanchez. Militating against holding that the error had such an effect is the fact that, although the district court misnamed the constitutional right at issue, the jurors were instructed they could find for Castel-lano only if they found each of the common-law elements was satisfied. And, as discussed, apparently under our circuit precedent, the elements amounted to the violation, regardless of how the court erroneously labeled it.
Nevertheless, using the words “constitutional right of due process” instead of “constitutional right against unreasonable seizure” probably altered the verdict. The jury’s damages findings were keyed to the entire criminal proceeding — as instructed, “acts that deprived [Castellano] of due process” — instead of the more discrete “seizure” violative of the Fourth Amendment. Reading the instructions as a whole, as we must, the clear error was further compounded by the interrogatories to the jury, which asked, for example, whether Defendants “deprived Castellano of his constitutional rights [note the plural form] by committing malicious prosecution”. (Emphasis added.) Throughout, for liability and damages, the interrogatories speak of the “violation of [Castella-no’s] constitutional rights”.
Viewing the instructions as a whole, this harkens to the “generalized” and “open-ended” concept of substantive due process rejected in Albright. As a result, Fragozo and Sanchez, in their individual capacities, were each found liable for $1.5 million for causing the brief, albeit unreasonable, arrest and detention of Castellano. In that light, the district court’s error affected their substantial rights.
Concerning the last (discretion) prong in our analysis for reversible plain error, a $3-million compensatory damage award *733 for a constitutional tort that does not exist (§ 1983 malicious prosecution grounded in due process) “seriously affect[s] the fairness of’ this trial. Olano, 507 U.S. at 732, 113 S.Ct. 1770. Likewise, permitting such damages to stand would seriously affect the “integrity [and] public reputation of [these] proceedings”. Id. Accordingly, I would hold that the erroneous instruction constituted reversible plain error.
III.
For the foregoing reasons, it is hoped that en banc review will be granted for this case to not only correct the reversible error caused by the jury instructions, but also to correct our “confused and confusing” precedent for § 1983 malicious prosecution claims. I respectfully dissent.

. Younger and its progeny explicated the "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances". Younger, 401 U.S. at 41, 91 S.Ct. 746.

. Significantly, review of the Fourth Amendment merely informed our court that the Amendment's clause providing "no Warrants shall issue, but upon probable cause”, U.S. Const. amend. IV, “clearly contemplates that before any person is seized by the State someone must first have determined that there was probable cause to believe he had broken the law”. Wheeler, 734 F.2d at 259 (first emphasis added). Our court declined to decide whether that clause applied in Wheeler. In later cases, our court noted that malicious prosecution claims could, in fact, implicate Fourth Amendment guarantees, but only where "the individual complains of an arrest, detention, and prosecution without probable cause”. Thomas v. Kippermann, 846 F.2d 1009, 1011 (5th Cir.1988); Sanders v. English, 950 F.2d 1152, 1159 (5th Cir.1992) (same). See text infra.

. The Seventh Circuit recently adopted this view, holding that, where, as in the case at hand, state law provides a malicious prosecution damages remedy, there is no such constitutional damages remedy. Newsome v. McCabe, 256 F.3d 747 (7th Cir.2001).

. Our court’s not requiring independent proof of a Fourth Amendment violation, even post-Albright, has not gone unnoticed. See, e.g., Frantz v. Village of Bradford, 245 F.3d 869, 874 (6th Cir.2001) (citing Kerr as an example of a circuit’s analyzing § 1983 malicious prosecution claims under state-law elements and not under the Fourth Amendment); Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000) (same), cert. denied, 531 U.S. 1130, 121 S.Ct. 889, 148 L.Ed.2d 797 (2001).

. This seizure-expansion concern is correct for almost all § 1983 malicious prosecution claims. Under certain circumstances, however, it may not hold. As discussed supra, malicious prosecution is the appropriate common-law vehicle for challenging an unreasonable seizure effected "pursuant to legal process”. See also Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) ("The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process.”).
Where, as here, the arrest is by warrant, then the arrest is pursuant to legal process. Therefore, such an arrest could serve as the starting point for the "seizure” required to *724 justify a § 1983 malicious prosecution claim. In that situation, for a prosecution that continued past the arraignment, the period of "seizure” would have to be likewise extended for purposes of the § 1983 claim.
The same is true for a warrantless arrest, which, of course, is not effected pursuant to legal process. In that situation, generally, the legal process begins with arraignment. Accordingly, to justify a § 1983 malicious prosecution claim, such a plaintiff would have to extend the period of seizure past the arraignment — e.g., by claiming his being bound-over for trial constitutes a "seizure”. See generally Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996).
On the other hand, the defendant may be arrested pursuant to warrant, but the prosecution dismissed before or at the arraignment. For such instances, the period of "seizure” need not be expanded.

. Some circuits have also addressed this issue. In Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir.1996), the Fourth Circuit held that a § 1983 claim for a warrantless arrest unsupported by probable cause — a claim most analogous to the common-law tort of false arrest — accrues as of the date of arrest. See id. at 182. However, a § 1983 claim for an arrest made by warrant unsupported by probable cause — more analogous to the common-law tort of malicious prosecution' — accrues from the time of favorable termination. See id. at 183. See also Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir.1998) (holding that § 1983 malicious prosecution claim accrues on the date of favorable termination).
Justice Ginsburg suggested there might not be a difference between the point of arrest and the point of termination; in her view, a Fourth Amendment "seizure" may continue so long as prosecution remains pending and, therefore, "[t]he time to file the § 1983 action should begin to run not at the start, but at the end of the episode in suit, i.e., upon dismissal of the criminal charges”. See Albright, 510 U.S. at 280, 114 S.Ct. 807 (Ginsburg, J., concurring). As noted earlier, however, such an approach requires a significant expansion of our understanding of the Fourth Amendment's protections.

. Heck casts some light on this limitations question. There, the Court considered whether a state prisoner's " § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence", 512 U.S. at 489-90, 114 S.Ct. 2364, could proceed in the light of the fact that success on the claim would “call into question the lawfulness of conviction or confinement”, id. at 483, 114 S.Ct. 2364. For assistance in answering that question, Heck looked to common-law malicious prosecution "because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process”. Id. at 484, 114 S.Ct. 2364. Noting that an element of the common-law tort is termination of the prior criminal proceeding in favor of the accused, and that the same policy reasons apply to § 1983 claims, the Court held Heck's claim barred. “Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.” Id. at 489-90, 114 S.Ct. 2364 (internal citations omitted).
Along this line, several observations about Heck are warranted. First, it is not clear that Heck's § 1983 claim was for malicious prosecution. Although the Court determined that malicious prosecution was the closest common-law analogy to Heck’s claim, it referred to his claim as one "for damages attributable to an unconstitutional conviction or sentence”, id. at 490, 114 S.Ct. 2364, and "to recover damages for allegedly unconstitutional conviction or imprisonment”, id. at 486, 114 S.Ct. 2364. Moreover, Albright had been decided only four months earlier; but Heck does not mention Albright. Finally, the allegations in Heck included, inter alia, pre-trial and trial abuses that went well beyond the "initiation” or "procurement” of a criminal proceeding.

. A point tangential to this probable cause discussion needs mentioning. It involves the malicious prosecution defendant's state of mind. The Fourth Amendment probable cause inquiry is an objective one. But, our continued reliance on the common-law elements requires us to look for malice in the defendant's actions. This inconsistency has induced at least one circuit to abandon the malice element:
We recognize that actual malice is an element of a malicious prosecution claim at common law. And, common-law principles "provide the appropriate starting point for” determining the elements of § 1983 actions. However, the Supreme Court has indicated that the reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective. Thus, we conclude that the subjective state of mind of the defendant, whether good faith or ill will, is irrelevant in this context.
Brooks v. City of Winston-Salem, 85 F.3d 178, 184 n. 5 (4th Cir.1996) (citations omitted); see also 1A Martin A. Schwartz, Section 1983 Litigation § 3.20, at 326 (3d ed.1997) (noting that the Second Circuit appears to have abandoned the malice element).

. Different circuits have interpreted the Al-bright requirement differently. Some understand Albright to hold that a § 1983 malicious prosecution can only reside in the Fourth Amendment. See, e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir.1997) ("[I]n order to prevail on [a malicious prosecution] claim under § 1983, the plaintiff must show a violation of his rights under the Fourth Amendment".), cert. denied, 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); see also Lambert v. Williams, 223 F.3d 257, 262 (4th Cir.2000) ("[T]here is no such thing as a ' § 1983 malicious prosecution' claim. What we [have] termed a ‘malicious prosecution’ ... is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution — specifically, the requirement that the prior proceeding terminate favorably to the plaintiff”.).
The Seventh Circuit formerly also interpreted Albright to require a § .1983 malicious prosecution claim to be located in the Fourth Amendment. Washington v. Summerville, 127 F.3d 552, 558 (7th Cir.1997) ("Albright ... instructs that the only constitutional amendment that is implicated by a malicious prosecution claim is the Fourth Amendment.”), cert. denied, 523 U.S. 1073, 118 S.Ct. 1515, 140 L.Ed.2d 668 (1998). As noted, it abandoned that approach recently, holding: the concurring opinion of Justices Kennedy and Thomas in Albright controls; consequently, where state law provides a malicious prosecution damages remedy, there is no such constitutional damages remedy. Newsome, 256 F.3d 747.
By contrast, the Third Circuit reads Albright "for the broader proposition that a section 1983 claim may be based on a constitutional provision other than the Fourth Amendment”. Torres v. McLaughlin, 163 F.3d 169, 172 (3d Cir.1998), cert. denied, 528 U.S. 1079, 120 S.Ct. 797, 145 L.Ed.2d 672 (2000). The Sixth Circuit interprets Albright differently yet:
Albright holds only that in cases in which a Fourth Amendment violation has occurred, a § 1983 claim cannot be brought under notions of substantive due process. Al-bright appears to acknowledge that in cases of egregious behavior that do not include a seizure, a plaintiff may have a § 1983 malicious prosecution claim supported by substantive due process rights.
Frantz v. Village of Bradford, 245 F.3d 869, 877 (6th Cir.2001).
As noted, in a case involving a claim of malicious prosecution in violation of First Amendment rights, we stated: "Whether the Constitution comprehends any such claim, is far from clear”. Johnson, 18 F.3d at 320. However, whether a § 1983 malicious prosecution claim can have its roots anywhere other than in the Fourth Amendment is not at issue in this case.. Although Castellano complained of First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment violations, summary judgment was awarded Fragozo and Sanchez on all but the First and Fourth Amendment claims. On appeal, Castellano has waived his First Amendment claim, stating that his malicious prosecution claim is rooted solely in the Fourth Amendment.